ACCEPTED
03-14-00714-CV
4530396
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/17/2015 2:03:31 PM
JEFFREY D. KYLE
CLERK

# No. 03-14-00714-CV

_____

## Court of Appeals
## Third Judicial District of Texas
## Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
3/17/2015 2:03:31 PM
JEFFREY D. KYLE
Clerk

_____

KEVIN TARR,
Appellant,

v.

LANTANA SOUTHWEST HOMEOWNERS' ASSOCIATION, INC.,
Appellee.

_____

## BRIEF OF APPELLANT

_____

On Appeal from the 98th District Court
of Travis County, Texas
Trial Court No. D-1-GN-12-002467
Judge Rhonda Hurley, Presiding

_____

Matthew Ploeger
State Bar No. 24032838
LAW OFFICE OF MATTHEW PLOEGER
901 S. Mopac Expressway, Suite 300
Barton Oaks Plaza, Building One
Austin, Texas 78746
P: 512.329.1926
F: 512.298.1787
Matthew@PloegerLaw.com

_Attorney for Appellant_

March 16, 2015                              Oral Argument Requested

# IDENTITY OF PARTIES AND COUNSEL

## 1. Appellant: *Kevin Tarr*

Represented on appeal by:

Matthew Ploeger
State Bar No. 24032838
LAW OFFICE OF MATTHEW PLOEGER
901 S. Mopac Expressway, Suite 300
Barton Oaks Plaza, Building One
Austin, Texas 78746
P: 512.329.1926
F: 512.298.1787
Matthew@PloegerLaw.com

Formerly represented on appeal by:

Paul Simon
State Bar No. 24003276
SIMON HERBERT & MCCLELLAND, LLP
3411 Richmond Avenue, Suite 400
Houston, Texas 77046
P: 713.987.7100
F: 713.987.7120

Represented at trial by:

David Furlow
State Bar No. 07555580
Thompson & Knight LLP
33 Clay Street, Suite 3300
Houston, Texas 77002
P: 713.654.8111
F: 713.654.1871
David.Furlow@tklaw.com

Richard M. Hunt
State Bar No. 10288700
Hunt Huey PLLC
3102 Maple Avenue, Suite 625
Dallas, Texas 75201
P: 214.641.9182
F: 214.279.6124
rhunt@hunthuey.com

Brent A. Money
State Bar No. 24049530
Henry & Money Law Group, P.C.
407 West Liberty Street
Round Rock, Texas 78664
P: 512.981.7301
F: 888.909.9312

**2. Appellee:  Lantana Southwest Homeowners' Association LLC**

Represented at trial and on appeal by:

Gregory B. Godkin
ROBERTS MARKEL WEINBERG, PC
2800 Post Oak Blvd., 57th Floor
Houston, TX 77056
P: 713.840.1666
F: 713.840.9404
ggodkin@rmwbhlaw.com


Represented at trial by:

C. Robert Dorsett, Jr.
DORSETT JOHNSON & SWIFT, LLP
12912 Hill Country Boulevard, Suite F210
Austin, TX 78738
P: 512.600.4365
F: 512.266.3655
bdorsett@dorsettswift.com

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant respectfully requests the opportunity to present oral argument in this appeal. Appellant believes that oral argument would assist the Court.

**RECORD REFERENCES**

In this brief, the following record citation forms will be used:

- Clerk's Record will be cited as "CR[page]."
- Supplemental Clerk's Record will be cited as "SCR[page]."
- The Appendix will be cited as "App-[tab] at [page]."
  - App-A (Final Modified Judgment)
  - App-B (Order on First MSJ)
  - App-C (Orders on Second MSJ)
  - App-D (Order and Letter on Third MSJ)

# TABLE OF CONTENTS

Identity of Parties and Counsel ................................................................................... ii

Statement Regarding Oral Argument ...................................................................... iv

Record References ..................................................................................................... iv

Table of Contents ........................................................................................................v

Index of Authorities ............................................................................................... viii

Statement of the Case..............................................................................................xv

Issues Presented ...................................................................................................... xvi

1. *It is undisputed that federal and state law protects group homes for recovering alcoholics and drug addicts from discrimination that would prevent them from locating and operating in residential neighborhoods. It is also undisputed that the deed restriction at issue in this case expressly provides that its restriction of permitted uses to "single family residential use" does not exclude those protected by federal and state law, such as group homes.*

   a. *Did the trial err in finding that the HOA conclusively proved that Mr. Tarr's operation of his property as a group home for recovering alcoholics and drug addicts is not a "residential use" within the meaning of the deed restrictions?*

   b. *Did the trial court err in ruling that it was Mr. Tarr's burden to prove that his use of his property as a protected group home did not breach the deed restrictions?*

2. *Is there a genuine issue of material fact with respect to whether the residents of Westlake Recovery House are handicapped or disabled under the applicable federal and state statutes?*

3. *Did the trial court err in awarding attorney's fees to the HOA even where the only relief the HOA obtained is an injunction that is void and unenforceable?*

Introduction ...................................................................................................................1

Statement of Facts .......................................................................................................3

   *The HOA's First Motion for Partial Summary Judgment* ..............................6

   *The HOA's Second Motion for Partial Summary Judgment* ..........................8

*The HOA's Third Motion for Summary Judgment* ........................................12

*The Final Judgment* ........................................12

Summary of the Argument ........................................13

Argument ........................................16

I. The trial court erred in granting summary judgment for the HOA on its claim that Westlake Recovery House breaches the deed restrictions. ..............17

    A. The HOA did not meet its burden of conclusively proving that the Westlake Recovery House residents were not authorized to remain "by any state or federal law" and, thus that Mr. Tarr's group home violated the deed restriction. ........................................19

        1. The HOA failed to meet its burden—the Texas and Federal Fair Housing Acts and supporting case law protect group homes such as Mr. Tarr's. ........................................21

        2. The HOA's assertion that Mr. Tarr's group home is a "for profit duplex" is immaterial to residential use under paragraph 4.1. ..............24

    B. The trial court erred in granting summary judgment with respect to the affirmative defense that statutory law prohibits enforcement of the deed restriction. ........................................31

        1. The evidence indicates that the Westlake Recovery House residents' impairments limit a major life activity. ...............................34

        2. There is a fact issue with respect to whether the residents are "regarded as disabled" under the third definition. ................................42

    C. The HOA failed to give Mr. Tarr proper notice of the alleged violations of the deed restrictions. ........................................46

II. The trial court erroneously granted summary judgment on Mr. Tarr's counterclaims based entirely on its erroneous summary judgment on the affirmative defenses. ........................................47

    A. Because the first partial summary judgment was in error, it cannot negate Mr. Tarr's counterclaims. ........................................48

    B. Even a valid partial summary judgment on Mr. Tarr's statutory affirmative defenses would not negate the counterclaims. ........................48

vi

III. The trial court erred in awarding attorney's fees to the HOA based on a void and unenforceable injunction........................................................51

Conclusion and Prayer ........................................................................57

Certificate of Compliance .................................................................58

Certificate of Service ........................................................................59

Appendix ............................................................................................60

# INDEX OF AUTHORITIES

**Cases**

*A Helping Hand, L.L.C. v. Baltimore Cnty., MD.*,
No. CIV.A. CCB-02-2568, 2005 WL 2453062 (D. Md. Sept. 30, 2005) .... 43, 44

*Advocacy Ctr. for Persons with Disabilities, Inc. v. Woodlands Estates
Ass'n, Inc.*,
192 F. Supp. 2d 1344 (M.D. Fla. 2002)..........................................................28

*Ashcreek Homeowner's Ass'n, Inc. v. Smith*,
902 S.W.2d 586 (Tex. App.—Houston [1st Dist.] 1995, no writ) .....................47

*BAART v. City of Antioch*,
179 F.3d 725 (9th Cir. 1999) ..........................................................................43

*Berger v. State,*
71 N.J. 206, 364 A.2d 993 (1976) ...................................................................23

*Blevins v. Barry–Lawrence County Ass'n for Retarded Citizens,*
707 S.W.2d 407 (Mo. 1986) (*en banc*).............................................................27

*Broadmoor San Clemente Homeowners Ass'n v. Nelson*,
25 Cal. App. 4th 1, 30 Cal. Rptr. 2d 316 (1994) ......................................... 17, 21

*Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and
Human Resources, Inc.*,
532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed.2d 855 (2001) .................................53

*Burka v. New York City Transit Auth.*,
680 F. Supp. 590 (S.D.N.Y. 1988) ..................................................................38

*C&R Transp. Inc. v. Campbell*,
406 S.W.2d 191 (Tex. 1966)............................................................................49

*Caron Foundation of Florida*,
879 F. Supp. 2d 1353 (S.D. Fla. 2012)..............................................................35

*Casa Marie, Inc. v. Superior Court*,
752 F. Supp. 1152 (D.P.R. 1990) ......................................................... 17, 21

*City of Edmonds v. Oxford House, Inc.,*
514 U.S. 725, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995)....................................34

*City of Edmonds v. Washington State Bldg. Code Council*,
18 F.3d 802 (9th Cir. 1994) ................................................................2

*City of Livonia v. Dep't of Soc. Servs.*,
423 Mich. 466, 378 N.W.2d 402 (1985)................................... 22, 27, 30

*City of Pasadena v. Gennedy*,
125 S.W.3d 687 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ...............20

*Clark v. Strayhorn*,
184 S.W.3d 906 (Tex. App.—Austin 2006, pet. denied) ............................ 40, 50

*Concord Estates Homeowners Ass'n, Inc v. Special Children's Foundation,
Inc.*,
459 So.2d 1242 (La. App. 1984) ..............................................................22

*Corp. of Episcopal Church in Utah v. W. Valley City*,
119 F. Supp. 2d 1215 (D. Utah 2000)......................................................35

*Costley v. Caromin House, Inc.*,
313 N.W.2d 21 (Minn. 1981) ..................................................................23

*Crane Neck Ass'n, Inc v. NYC/Long Island Co Services Group*,
92 A.D.2d 119, 460 N.Y.S.2d 69 (1983)..................................................23

*Crewe v. U.S. Office of Pers. Mgmt.*,
834 F.2d 140 (8th Cir. 1987) ..................................................................35

*Crowley v. Knapp*,
94 Wis. 2d 421, 288 N.W.2d 815 (1980).................................................23

*Davis v. Bucher,*
451 F. Supp. 791 (E.D. Pa. 1978)............................................................35

*Deep East Texas Regional Mental Health and Mental Retardation Servs. v.
Kinnear*,
877 S.W.2d 550 (Tex. App.—Beaumont 1994, no writ)................... 2, 17, 21, 25

*Dornbach v. Holley*,
854 So. 2d 211 (Fla. Dist. Ct. App. 2002)...............................................28

*Drew v. Unauthorized Practice of Law Comm.*,
970 S.W.2d 152 (Tex. App.—Austin 1998, pet. denied) .................................54

*Enriquez v. Rodriguez-Mendoza*,
   No. 03-12-00220-CV, 2013 WL 490993
   (Tex. App.—Austin Feb. 1, 2013, no pet.) (mem. op.) ........................................55

*Ex parte Fernandez*,
   645 S.W.2d 636 (Tex. App.—El Paso 1983, no writ)..........................................56

*Fabio v. Ertel*,
   226 S.W.3d 557 (Tex. App.—Houston [1st Dist.] 2007, no pet.)................ 40, 50

*Farrar v. Hobby*,
   506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).......................................53

*Fruehauf Corp. v. Carrillo*,
   848 S.W.2d 83 (Tex. 1993) (per curiam)...................................................... 40, 50

*Gillebaard v. Bayview Acres Ass'n*,
   263 S .W.3d 342 (Tex. App—Houston [1st Dist.] 2007, pet. denied) ................19

*Gregory v. State Dep't of Mental Health, Retardation & Hosps.*,
   495 A.2d 997 (R.I. 1985).....................................................................................26

*Hewitt v. Helms*,
   482 U.S. 755, 107 S. Ct. 2672, 96 L. Ed. 2d 654 (1987) ...................................53

*Hicks v. Falcon Wood Prop. Owners Ass'n*,
   No. 03-09-00238-CV, 2010 WL 3271723
   (Tex. App.—Austin Aug. 19, 2010, no pet.) (mem. op.) ...................................20

*Hill v. Community of Damien of Molokai*,
   121 N.M. 353, 911 P.2d 861, 871 (1996)....................................... 17, 21, 26, 29

*Holy Cross Church of God in Christ v. Wolf*,
   44 S.W.3d 562 (Tex. 2001)..................................................................................18

*Human Res. Research & Mgmt. Grp., Inc. v. Cnty. of Suffolk*,
   687 F. Supp. 2d 237 (E.D.N.Y. 2010) .................................................................35

*In re Estate of Byrom*,
   No. 120900279CV, 2011 WL 590588
   (Tex. App.—Tyler Feb. 16, 2011, pet. denied) (mem. op.) ................................56

*In re Garza*,
   126 S.W.3d 268 (Tex. App.—San Antonio 2003, orig. proceeding)..................56

*In re Krueger*,
   No. 03-12-00838-CV, 2013 WL 2157765
   (Tex. App.—Austin May 16, 2013, orig. proceeding) (mem. op.) ........ 54, 55, 56

*In re McCray*,
   No. 05-13-01195-CV, 2013 WL 5969581
   (Tex. App.—Dallas Nov. 7, 2013, orig. proceeding) (mem. op.) ....................... 56

*Innovative Health Sys., Inc. v. City of White Plains*,
   117 F.3d 37 (2nd Cir. 1997) ................................................................................ 43

*Intercontinental Group P'ship v. KB Home Lone Star L.P.*,
   295 S.W.3d 650 (Tex. 2009) ................................................................ 52, 53, 57

*J.T. Hobby & Son, Inc v. Family Homes of Wake Cty., Inc.*,
   302 N.C. 64, 274 S.E.2d 174 (1981) ................................................................... 23

*Jackson v. Williams*,
   714 P.2d 1017 (Okla. 1985) ............................................................... 26, 29, 30

*Jeffrey O. v. City of Boca Raton*,
   511 F. Supp. 2d 1328 (S.D. Fla. 2007) ............................................. 37, 38, 41, 42

*Knudtson v. Trainor*,
   216 Neb. 653, 345 N.W.2d 4 (1984) ................................................................... 22

*Lakeside Resort Enterprises, LP v. Board of Supervisors of Palmyra
   Township*,
   455 F.3d 154 (3rd Cir.2006) ............................................................................... 37

*Loy v. Harter*,
   128 S.W.3d 397 (Tex. App.—Texarkana 2004, pet. denied) ....................... 40, 50

*Martin v. Constance*,
   843 F. Supp. 1321 (E.D. Mo. 1994) ................................................... 17, 21, 27

*Maull v. Community Living for the Handicapped, Inc.*,
   813 S.W.2d 90 (Mo.Ct.App.1991) ...................................................................... 30

*McKivitz v. Twp. of Stowe*,
   769 F. Supp. 2d 803 (W.D. Pa. 2010) .......................................................... 36, 37

*Merrell Dow Pharm., Inc. v. Havner*,
   953 S.W.2d 706 (Tex. 1997) ............................................................................... 34

*MX Group, Inc. v. City of Covington,*
  293 F.3d 326 (6th Cir. 2002) ................................................ 37, 43, 44

*Norton v. Deer Creek Prop. Owners Ass'n, Inc.*,
  No. 03-09-00422-CV, 2010 WL 2867375
  (Tex. App.—Austin July 22, 2010, no pet.) (mem. op.).....................................52

*Ohrt v. Union Gas Corp.*,
  398 S.W.3d 315 (Tex. App.—Corpus Christi 2012, pet. denied) ............... 39, 50

*Oxford House, Inc. v. City of Baton Rouge, La.*,
  932 F. Supp. 2d 683 (M.D. La. 2013)........................................ 33, 41

*Oxford House, Inc. v. Town of Babylon,*
  819 F. Supp. 1179 (E.D.N.Y. 1993) ..............................................35

*Oxford House, Inc. v. Twp. of Cherry Hill,*
  799 F. Supp. 450 (D.N.J. 1992) ............................................. 33, 36

*Parry v. Mohawk Motors of Michigan, Inc.,*
  236 F.3d 299 (6th Cir. 2001) ....................................................44

*Permian Basin Centers for Mental Health & Mental Retardation v.
Alsobrook*,
  723 S.W.2d 774 (Tex. App.—El Paso 1986, writ ref'd n.r.e.).................... 22, 25

*Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*,
  294 F.3d 35 (2d Cir. 2002) ........................................ 35, 36, 37, 39

*Rhodes v. Palmetto Pathway Homes, Inc.*,
  303 S.C. 308, 400 S.E. 2d 484 (1991) ........................................ passim

*Rhone–Poulenc, Inc. v. Steel,*
  997 S.W.2d 217 (Tex. 1999)......................................................18

*Richardson v. SV Almeda I Ltd. P'ship*,
  No. 01-11-01004-CV, 2013 WL 4680392
  (Tex. App.—Houston [1st Dist.] Aug. 29, 2013, no pet.) (mem. op.) ..................2

*Rodgers v. Lehman,*
  869 F.2d 253 (4th Cir. 1989) ....................................................35

*School Bd. of Nassau County v. Arline,*
  480 U.S. 273, 107 S. Ct. 1123, 94 L. Ed. 2d 307 (1987) ....................................44

xii

*Science Spectrum, Inc. v. Martinez,*
 941 S.W.2d 910 (Tex. 1997)...................................................................48

*Sharp v. deVarga*,
 No. 03-05-00550-CV, 2010 WL 45871
 (Tex. App.—Austin Jan. 8, 2010, pet. denied) (mem. op.) .................................20

*State ex rel. Region II Child & Family Services, Inc v. Eighth
 Judicial Dist. Court,*
 187 Mont. 126, 609 P.2d 245 (1980)........................................................ 23, 30

*Sullivan v. City of Pittsburgh*,
 811 F.2d 171 (3d Cir. 1987) .................................................................35

*United States v. Borough of Audubon, N.J.*,
 797 F. Supp. 353 (D.N.J. 1991)..............................................................42

*United States v. City of Chicago Heights*,
 161 F. Supp. 2d 819 (N.D. Ill. 2001)........................................................27

*United States v. Scott*,
 788 F. Supp. 1555 (D. Kan. 1992)...................................................... 1, 2, 17, 21

*United States v. Southern Mgmt. Corp.*,
 955 F.2d 914 (4th Cir. 1992) ............................................................. 37, 44

*United States v. Wagner*,
 940 F. Supp. 972, 979 (N.D. Tex. 1996) .................................................. 1, 17, 21

*Valley Hous. LP v. City of Derby*,
 802 F. Supp. 2d 359 (D. Conn. 2011)........................................................37

*Villalobos v. Holguin,*
 146 Tex. 474, 208 S.W.2d 871 (Tex. 1948) ....................................................54

*Wagner v. Fair Acres Geriatric Center,*
 49 F.3d 1002 (3d Cir.1995) ...................................................................36

*Webb v. Glenbrook Owners Ass'n,*
 298 S.W.3d 374 (Tex. App.—Dallas 2009, no pet.) .................................. 55, 56

*Welsch v. Goswick,*
 130 Cal. App.3d 398, 181 Cal. Rptr. 703 (1982) ...............................................23

*Wibbenmeyer v. TechTerra Communications, Inc.*,
   No. 03-09-00122-CV, 2010 WL 1173072
   (Tex. App.—Austin Mar. 26, 2010, pet. denied) (mem. op.)................................53

## Statutes & Regulations

24 C.F.R. § 100.201 ............................................................................... 33, 38, 44

42 U.S.C. § 12102.........................................................................................32

42 U.S.C. § 3602(h) ................................................................................ 32, 44

TEX. PROP. CODE § 301.002........................................................................2, 7

TEX. PROP. CODE § 301.003........................................................................7, 32

TEX. PROP. CODE § 301.025..........................................................................7

TEX. PROP. CODE § 5.006............................................................................52

## Rules

TEX. R. CIV. P. 166a(c)........................................................................ 18, 48, 49

TEX. R. CIV. P. 166a(i) ..................................................................................34

TEX. R. CIV. P. 683 ................................................................................ 55, 56

## Other Authorities

H.R. Rep. No. 711, 100th Cong., 2d Sess. 22 (1988),
   *reprinted in* 1988 U.S. Code Cong. & Admin. News 2173................................33

Laurie C. Malkin, *Troubles at the Doorstep: The Fair Housing Amendments
   Act of 1988 and Group Homes for Recovering Substance Abusers*,
   144 U. PA. L. REV. 757 (1995).........................................................................38

# STATEMENT OF THE CASE

*Nature of the Case:*   The Appellee Lantana Southwest Homeowners Association, Inc. ("HOA") brought suit seeking an injunction and asserting that Appellant Mr. Tarr's use of his home as a group home for recovering alcoholics and drug addicts violated the deed restrictions. Mr. Tarr counterclaimed for discrimination under the Federal Housing Act, Texas Fair Housing Act, and other related statutes and ordinances.

*Trial Court:*   98th District Court of Travis County, Texas
Honorable Rhonda Hurley, presiding

*Trial Court Proceedings:*   The trial court (Judge Amy Clark Meachum) granted *ex parte* temporary restraining order on August 14, 2012.

The case was adjudicated in three separate partial summary judgments, culminating in a final modified judgment entered October 28, 2014. App-A

| | |
|---|---|
| 1st Partial Sum. J. *Judge Yelenosky presiding* App-B | Granted the HOA's no-evidence MSJ on Mr. Tarr's affirmative defense that federal and state statutes barred enforcement of the restriction against group homes; Denied the HOA's traditional MSJ. |
| 2nd Partial Sum. J. *Judge Shepperd presiding* App-C | Granted traditional summary judgment for the HOA on its breach claim; Granted HOA's no-evidence MSJ on Mr. Tarr's counterclaims. |
| 3rd Partial Sum. J. *Judge Triana presiding* App-D | Granted injunction commanding Mr. Tarr to "refrain from breaching the [restrictive covenants]." |

*Trial Court's Disposition:*   The trial court entered judgment for Appellee HOA incorporating the partial summary judgments and awarding $88,000 in attorney's fees and $35,000 in appellate attorney's fees. App-A

xv

# ISSUES PRESENTED

1.    It is undisputed that federal and state law protects group homes for recovering alcoholics and drug addicts from discrimination that would prevent them from locating and operating in residential neighborhoods. It is also undisputed that the deed restriction at issue in this case expressly provides that its restriction of permitted uses to "single family residential use" does not exclude those protected by federal and state law, such as group homes.

    a.    Did the trial err in finding that the HOA conclusively proved that Mr. Tarr's operation of his property as a group home for recovering alcoholics and drug addicts is not a "residential use" within the meaning of the deed restrictions?

    b.    Did the trial court err in ruling that it was Mr. Tarr's burden to prove that his use of his property as a protected group home did not breach the deed restrictions?

2.    Is there a genuine issue of material fact with respect to whether the residents of Westlake Recovery House are handicapped or disabled under the applicable federal and state statutes?

3.    Did the trial court err in awarding attorney's fees to the HOA even where the only relief the HOA obtained is an injunction that is void and unenforceable?

TO THE HONORABLE COURT OF APPEALS:

Appellant Kevin Tarr respectfully submits this Brief.

## INTRODUCTION

Kevin Tarr owns and operates Westlake Recovery House, a residential group home for men recovering from alcohol and drug addictions located in the Lantana Southwest subdivision. Courts have long and routinely held that group homes in residential neighborhoods are protected by federal and state law. "Since the [Federal Housing Act] Amendments took effect, courts have made clear that single family deed restrictions cannot be used to exclude group homes for disabled persons from single family neighborhoods." *United States v. Wagner*, 940 F. Supp. 972, 979 (N.D. Tex. 1996). In the Fair Housing Act ("FHA"), the federal government expressed a clear policy in favor of removing barriers preventing individuals with physical and mental disabilities from living in group homes in residential settings and against restrictions that serve to exclude congregate living arrangements for the disabled. "The legislative history of the amended Fair Housing Act reflects the national policy of deinstitutionalizing disabled individuals and integrating them into the mainstream of society." *United States v. Scott*, 788 F. Supp. 1555, 1561 n.5 (D. Kan. 1992). Toward this end, Congress intended the FHA "to protect the right of handicapped persons to live in the residence of their choice in the community." *City of Edmonds v. Washington State Bldg. Code Council*, 18 F.3d 802, 806 (9th Cir.

1

1994), *aff'd, City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 115 S. Ct. 1776, 131 L. Ed. 2d 801 (1995).

Further, the FHA "is intended to prohibit special restrictive covenants [that] exclud[e], for example, congregate living arrangements for persons with handicaps." *Scott*, 788 F. Supp. at 1561. In *Deep East Texas Regional Mental Health and Mental Retardation Servs. v. Kinnear*, the court explained:

> It is now well established that the Fair Housing Act prohibits the enforcement of restrictive covenants that discriminate or have the effect of discriminating on the basis of handicap. The Fair Housing Act has been declared to prohibit special restrictions, special restrictive covenants, or other terms or conditions or denials of service because of an individual's handicap and which exclude congregate living arrangements for persons with handicaps.

877 S.W.2d 550, 558 (Tex. App.—Beaumont 1994, no writ). This is true of the Texas Fair Housing Act as well. TEX. PROP. CODE § 301.002(3) (stating that the purpose of the Texas Fair Housing Act is to "provide rights and remedies substantially equivalent to those granted under federal law"); *Richardson v. SV Almeda I Ltd. P'ship*, No. 01-11-01004-CV, 2013 WL 4680392, at *6 (Tex. App.—Houston [1st Dist.] Aug. 29, 2013, no pet.) (mem. op.). It is beyond dispute that those recovering from alcohol and drug addictions like the residents of Westlake Recovery House are impaired within the statutory meaning. Indeed, the record is

2

replete with evidence that the residents are handicapped by reason of their addictions.

But the Lantana Southwest Homeowners' Association does not want the Westlake Recovery House in its neighborhood and sought an injunction to force the handicapped residents out. The trial court failed to properly recognize and apply the legal protections, which arise in three separate ways in this case to protect Mr. Tarr's group recovery home:

1) ***As an element of the HOA's claim that Mr. Tarr's group home violates the restrictive covenant's residential use limitation:*** The deed restriction on which the HOA bases its claim expressly provides that it does not exclude uses that are protected by federal or state law, which includes the FHA's protection of group homes for the handicapped. Thus, to prove breach, the HOA must prove that Mr. Tarr's use of the property as a group home falls outside the deed restriction's inclusive definition.

2) ***As an affirmative defense:*** Even if the deed restrictions had not incorporated the statutory protections into the definition of residential use, the statutes would nevertheless prohibit discriminatory enforcement of such a deed restriction.

3) ***As claims for relief based on discrimination:*** The federal and Texas FHAs provide causes of action for those aggrieved by discriminatory conduct in violation of the FHA.

This Court should reverse and remand for a trial.

## STATEMENT OF FACTS

Appellant Kevin Tarr operates a group home for men recovering from drug and alcohol addictions in a residential neighborhood in southwest Austin. Mr. Tarr began operating Westlake Recovery House on July 1, 2012, as a group home offering

3

a safe and supportive living environment for men who are recovering from drug or alcohol addiction. CR294; SCR19-20; SCR23-37. In addition to living quarters, Westlake Recovery House provides in-house twelve-step meetings, drug testing, accountability partners, and life skills coaching to facilitate recovery and to help the residents stay off drugs and alcohol. CR294; SCR19-20; SCR23-37. The residents procure their own food, do their own cooking, and generally live communally as a family. CR284, 415.

Westlake Recovery House accepts only residents who have a "handicap" or "disability" as those terms are defined in the Federal Fair Housing Act, Texas Fair Housing Act, Americans with Disabilities Act, and the Federal Rehabilitation Act. CR294-95; SCR19-20; SCR23-37. Westlake Recovery House accepts only those applicants who require the special living conditions provided in a group recovery home like Westlake Recovery House. CR294-95; SCR20; SCR23-37. Further, Westlake Recovery House does not accept or allow any person to remain who is currently using drugs or alcohol. CR294-95; SCR20.

Mr. Tarr's property is located within the Lantana Southwest subdivision and is subject to homeowners' association deed restrictions (the "deed restrictions"). CR294; CR10-36. Paragraph 4.1 provides:

> Residential Use. All Lots shall be improved and used solely for single family residential use, inclusive of a garage, fencing and other such Improvements as are necessary or customarily incident to residential use. No

building, outbuilding or portion of either may be built on a Lot for use as income-producing property (i.e., for lease to tenants who do not occupy an entire Lot). A "single family" shall be defined as any number of persons related by blood, marriage or adoption, and shall also include foster children and domestic servants. This Declaration shall not, however, exclude from a Lot any person who is authorized to so remain by any state or federal law.

CR16, ¶4.1.

Responding to concerns expressed by his neighbors, Mr. Tarr sent a letter to them explaining that he was using his property as a recovery house and that this use is protected by federal and state law. CR38. On August 10, 2012, Steve Portnoy, the president of the HOA, sent an email to a Lantana homeowner and representatives of the HOA's management company in which he stated:

> This has now escalated past the point of what is even remotely acceptable for our neighborhood. A halfway house? This has to be shut down and quickly. Can you please have the HOA attorney contact me about pursuing a more aggressive course of action?

SCR21. That same day, the HOA's attorney sent Mr. Tarr a letter threatening to bring suit. CR474. Although the deed restrictions require ten-days' notice before filing suit (CR34, ¶12.8), only four days later, on August 14, 2012, Appellee Lantana Southwest Homeowners' Association, Inc. (the "HOA"), filed its "Original Petition, Application for Temporary Restraining Order, & Request for Disclosure," alleging that Mr. Tarr's use of his property as a group recovery home violates paragraph 4.1 of the Declaration of Covenants, Conditions and Restrictions ("deed restrictions"),

5

which limits a landowner's permissible use to single family residential use. CR5-50. On that same day, in an *ex parte* hearing, the trial court (Judge Amy Clark Meachum) granted the HOA's temporary restraining order.

On August 27, 2012, Mr. Tarr filed his Answer and Counterclaims. Mr. Tarr argued that the use of a residential house as a group home for those recovering from substance abuse is protected under certain federal and state laws because its residents were "handicapped" or "disabled" within the meaning of those laws. Mr. Tarr also brought counterclaims against the HOA for discrimination under some of those laws.

Rather than address the issues head on, the HOA filed three separate motions for partial summary judgment, CR168, 298, and 499, each of which was heard and decided by a different judge on the Travis County rotating docket. CR296-97, 496-98, and 617. These partial summary judgments are incorporated in the Final Modified Judgment. CR621-24.

### The HOA's First Motion for Partial Summary Judgment

On August 26, 2013, the HOA moved for partial summary judgment on both traditional and no-evidence grounds on Mr. Tarr's affirmative defense that federal and state laws against discrimination against handicapped or disabled individuals prohibited excluding the Westlake Recovery House residents. CR168-75. The HOA's traditional motion argued that Mr. Tarr does not have standing to assert these

6

defenses and that the federal and state discrimination laws do not apply as a matter of law. The trial court denied the HOA's traditional motion. CR296.

But the trial court granted the HOA's no-evidence motion. CR297. In that motion, the HOA asserted that Mr. Tarr has no evidence to support his affirmative defenses under federal and state law. CR172-75. Specifically, the HOA asserted that there was no evidence that the residents of Westlake Recovery House meet the statutory definitions of handicap and disability under the various statutes. CR173-74.

In response, Mr. Tarr submitted an affidavit in which he testified that he is operating a recovery group home and that to be admitted to Westlake Recovery House, all prospective residents are required to have a "handicap" as defined by the Federal Fair Housing Act (or "disability as defined by the Texas Fair Housing Act)[1] by reason of a drug or alcohol addiction for which they are seeking recovery. CR294-95. Moreover, he testified that the residents must undergo substance testing to ensure that they are not currently using drugs or alcohol. *Id.* The residents are also required to participate in in-house and outside recovery meetings as part of their recovery. *Id.* Mr. Tarr also testified that Westlake Recovery House provides "a live-

---

[1] The definition of "disability" in the Texas FHA is identical to the definition of "handicap" in the Federal FHA, and the protections offered are the same as provided by the federal FHA. TEX. PROP. CODE §§ 301.002(3), 301.003(6) , 301.025. Throughout this brief, discussion of the Federal FHA refers to both the federal and Texas FHA.

in manager, assigned accountability partners, transportation assistance to outside recovery meetings, and other services consistent with the property's primary purpose as a drug and alcohol recovery group home." *Id.*

Although the HOA did not reply to Mr. Tarr's response or respond to this evidence, on September 30, 2013, the trial court (Judge Stephen Yelenosky) granted only the no-evidence portion of the HOA's first motion and denied the traditional portion of the motion. CR297; CR621.

### The HOA's Second Motion for Partial Summary Judgment

On January 1, 2014, the HOA filed a second motion for partial summary judgment. This motion also had two parts: The first part asserted that Mr. Tarr's counterclaims under federal and state discrimination statutes were barred as a matter of law because of the trial court's ruling on the HOA's first no-evidence motion on the affirmative defenses. CR298-304. The HOA offered no other ground for summary judgment on Mr. Tarr's statutory discrimination counterclaims. CR301.

In the second part of the motion, the HOA, relying entirely on Mr. Tarr's "pleadings and testimony," claimed that it was entitled to summary judgment on its claim that Mr. Tarr's use of the property as a group recovery home breached paragraph 4.1 of the deed restrictions. CR304-05. The HOA's "evidence" of breach is captured in a mere three sentences. First, the HOA notes that Mr. Tarr's Answer states that he is "operating a sober house, group home." CR304. Next, the HOA

8

notes that Mr. Tarr testified by deposition that was aware of the deed restriction. *Id.* Last, the HOA asserts that Mr. Tarr testified in his deposition that "this is a for-profit endeavor in which he is making at least $6,000 to $8,000 per month." CR304. In fact, Mr. Tarr testified that Westlake Recovery House charges residents $600 to $800 per month, meaning that, with ten residents, Westlake Recovery House collects between $6,000 and $8,000 each month. CR415. Of course, this amount represents gross receipts, not net profits. *Id.* ("Q. How much money on average do you gross each month from the recovery house?"). Importantly, the HOA's motion attached no evidence indicating that using the property as a group recovery home is not a permitted residential use within paragraph 4.1's definition, which incorporates federal and state law protections for group homes and provides that the restriction is violated only if the residents are not "authorized to so remain by any state or federal law." CR16, ¶ 4.1.

Mr. Tarr responded with his own affidavit and those of seven residents of the recovery home. SCR19-37. Tarr's affidavit states that "Westlake Recovery House is a group home that offers a safe and supportive living environment for men who are recovering from drug or alcohol addiction." SCR19. It provides living quarters, as well as "in-house twelve step meetings, drug testing, accountability partners, and life skills coaching to help the men stay off drugs and alcohol." SCR19-20. Further, Westlake Recovery House accepts only those that require the special living

9

conditions that the home provides and does not allow any person that is currently using drugs or alcohol.  SCR20.

In response to the HOA's mischaracterization of his testimony about Westlake Recovery House's finances, Mr. Tarr testified that "Westlake Recovery House charges its residents for their living accommodations and other services.  It has to do so in order to provide these services.  Its costs of operation are approximately $7,200 per month.  At this time I do not take a salary or other compensation for operating the House, and although we have been a sober house for 18 months, the company has not yet broken even. I personally finance this loss."  SCR20.

Each of the Westlake Recovery House residents testified that they are recovering from drug or alcohol addictions and came to Westlake Recovery House seeking recovery.  SCR23-37.  Each acknowledged that his addiction is a chronic condition and that he needs a group recovery setting to resist the addiction.  *Id.* Further, each testified about the substantial limitations his addiction has placed on his life. *Id.*  For example, Brad Buhler testified that

> I know from my personal experience that addiction is a chronic condition.  With the proper support I can stay away from alcohol but I can never get rid of the craving for it.
>
> Before I began my recovery, my addiction to alcohol caused me and my family continuing harm. As a result of my addiction, I had two DUI's, my driver[']s license was suspended, lost over $500,000 financially, and served fourteen months in prison.

10

> Living in the Westlake Recovery House is critical to my successful recovery from my addiction. The structured environment, services, and support from the house and other addicts helps me avoid relapsing into the use of alcohol. The members of the group living in the house are like a family, and we support each other. It is also very helpful to me to live in an ordinary residential neighborhood where, I can feel like an ordinary person rather than merely another alcoholic.

SCR23, ¶¶2-5.

Similarly, Kole Coward testified that for three years immediately before beginning his recovery for addiction to marijuana, Xanax, and alcohol, he was "homeless, lost three jobs, lost all my clothes, and over $5,000." SCR25, ¶¶2-4. Jackson Hanks testified that, as a result of his former 10-year heroin addiction, he "lost all of my possessions, cost my family over $1,000,000 in losses, and spent six months in prison with a felony for possessing an illegal drug." SCR27, ¶¶2-4. Daniel Kelly likewise testified that, before his recovery began, he abused alcohol for four years, leading to the loss of "a successful job, caused two car accidents, was arrested for driving while intoxicated, lost over $50,000 financially, and ended three relationships with girlfriends." SCR32, ¶¶2-4. In all, the seven residents testified by affidavit, each with his own similar, but unique and personal, story about how substance abuse had severely impacted his life, and how the recovery home has changed that. SCR23-37.

11

On March 24, 2014, the trial court (Judge Eric Shepperd) granted the HOA's second motion for partial summary judgment as to each of Mr. Tarr's counterclaims, as well as the HOA's affirmative claim that Mr. Tarr breached the deed restrictions. CR497-98.

### The HOA's Third Motion for Summary Judgment

On June 12, 2014, the HOA's filed its motion for final summary judgment seeking to permanently enjoin Mr. Tarr from "utilizing his Lot for multifamily use and/or as an income producing property" and an award of attorney's fees. CR499-605. On July 18, 2014, Mr. Tarr responded and moved for reconsideration of the two partial summary judgments. CR606-13.

On July 30, 2014, the trial court (Judge Gisela D. Triana) granted the HOA's motion only in part, ordering only that Mr. Tarr be "commanded to desist and refrain from breaching the [deed restrictions]" and also awarded attorney's fees to the HOA.[2]

### The Final Judgment

On September 3, 2014, the trial court (Judge Amy Clark Meachum) entered a final judgment incorporating the three partial summary judgments and awarding the

---

[2] The trial court (Judge Triana presiding) partially granted the third motion for summary judgment—ordering the injunctive relief quoted above—based on the issuance of the first two partial summary judgments. CR617. Judge Triana also issued a letter ruling finding that the HOA was entitled to attorney's fees but finding that a fact issue exited as to the amount of fees to be awarded. CR619.

HOA $88,000 in attorneys' fees and $35,000 in appellate attorney's fees if Mr. Tarr should pursue an unsuccessful appeal. SCR70-72. This final judgment contained an error regarding the date of the first partial summary judgment, which was corrected when, on October 28, 2014, the trial court (Judge Rhonda Hurley) entered its Final Modified Judgment. CR621-24.[3]

## SUMMARY OF THE ARGUMENT

There is no dispute that federal and state statutes protect group homes and prevent the use of restrictive covenants to prohibit their location in residential neighborhoods. Nor is there any dispute that the deed restrictions for the Lantana Southwest subdivision recognize and incorporate those protections directly into its residential use restriction. That is, paragraph 4.1 of the deed restrictions, the very provision on which the HOA bases its claim, provides that uses that are protected by federal and state law—which includes group homes for the handicapped—may not be excluded by the residential use restriction.

Further, it cannot be reasonably disputed that alcoholics and drug addicts seeking recovery in a residential group home are handicapped under the statutory definitions. The HOA does not dispute that to be admitted to Westlake Recovery House an applicant must be handicapped. Nor does the HOA dispute the fact that

---

[3] Mr. Tarr timely filed a motion for new trial, extending the trial court's plenary power. SCR73-93.

Westlake Recovery House provides services for its residents for the purpose of facilitating their recovery from addiction. In short, the HOA does not appear to dispute that Westlake Recovery House is exactly what it purports to be: a group home for men handicapped by reason of their addictions to drugs and alcohol and unable to remain clean or otherwise care for themselves without the care and assistance of a residential group home.

Nevertheless, the HOA does not want Westlake Recovery House in its neighborhood and, without proper notice to Mr. Tarr, sought and obtained an *ex parte* temporary restraining order against Mr. Tarr's operation of his property as a group home. Then, through a series of piecemeal and erroneous partial summary judgments each heard by a different judge, the trial court compounded the error of that TRO by giving the HOA summary judgment on its breach claim and dismissing Mr. Tarr's affirmative defenses and discrimination counterclaims.

First, the HOA failed to carry its summary judgment burden to prove conclusively that Mr. Tarr's group home was not a permitted use under paragraph 4.1. Indeed, the HOA did not even purport to contest that Westlake Recovery House is a protected group home. Nevertheless, the trial court ruled that the HOA had conclusively proved its breach claim.

Moreover, even if the deed restrictions had not incorporated the statutory protections into the residential use restriction, the statutes would nevertheless

14

prohibit discriminatory enforcement of such a deed restriction. Further, the federal and Texas FHAs provide causes of action for those aggrieved by discriminatory conduct in violation of the FHA. But the trial court erroneously ruled that there was not even a scintilla of evidence that the residents of Westlake Recovery House are handicapped despite testimony regarding the House's admissions policy and services for handicapped men seeking recovery for substance addictions. Moreover, the trial court ignored the testimony of the residents themselves regarding their impairment due to their addictions, the ways in which their addictions prevent them from caring for themselves, and the risk of relapse without the services provided by Westlake Recovery House.

This evidence is much more than a scintilla of evidence that the current and future residents of Westlake Recovery House are handicapped under the statutory definitions. Indeed, as the HOA's pleadings and the evidence make clear, it is the residents' handicaps that motivated the HOA's actions to remove them from the neighborhood.

Finally, the trial court awarded the HOA $88,000 in attorney's fees (and $35,000 in appellate attorney's fees). But this attorney's fees award cannot stand. First, it is based on the erroneous summary judgment rulings. But, in addition, the award must be reversed because the HOA is not a "prevailing party" because the injunction it obtained is void and unenforceable. Contrary to the rules, the injunction

15

(1) does not specifically identify the behavior that Mr. Tarr must refrain from and (2) refers to an extraneous document, the deed covenants, to define its scope. Rather, it merely provides that Mr. Tarr must refrain from breaching the deed restrictions. Thus, because the HOA did not procure a judgment that materially altered the legal positions of the parties, it is not a prevailing party and may not be awarded attorney's fees.

For all of the reasons discussed below, this Court should reverse the trial court's erroneous summary judgment and remand for trial.

## ARGUMENT

The disjointed and piecemeal manner in which the issues were presented to five different judges of the Travis County trial bench confused the issues in the trial court and complicates the presentation of the issues on appeal. Rather than address the various partial summary judgments separately, Part I below addresses the HOA's claims that Mr. Tarr violated the deed restrictions (second partial summary judgment) and Mr. Tarr's affirmative defenses (second partial summary judgment); Part II addresses the trial court's erroneous dismissal of his counterclaims (second partial summary judgment). Part III addresses the trial court's erroneous award of attorney's fees and the invalidity of the injunction (third partial summary judgment and final modified judgment).

16

**I.     The trial court erred in granting summary judgment for the HOA on its claim that Westlake Recovery House breaches the deed restrictions.**

Courts have long and routinely held that group homes in residential homes are protected by federal and state law. "Since the FHA Amendments took effect, courts have made clear that single family deed restrictions cannot be used to exclude group homes for disabled persons from single family neighborhoods." *United States v. Wagner*, 940 F. Supp. 972, 979 (N.D. Tex. 1996) (citing *Martin v. Constance,* 843 F. Supp. 1321, 1326 (E.D. Mo. 1994).[4] In *Deep East Texas*, the court explained:

> It is now well established that the Fair Housing Act prohibits the enforcement of restrictive covenants that discriminate or have the effect of discriminating on the basis of handicap. The Fair Housing Act has been declared to prohibit special restrictions, special restrictive covenants, or other terms or conditions or denials of service because of an individual's handicap and which exclude congregate living arrangements for persons with handicaps.

877 S.W.2d 550, 558 (Tex. App.—Beaumont 1994, no writ).

Lantana moved for summary judgment on its claim that Mr. Tarr's use of his property as a group home is a violation of paragraph 4.1. CR304. Because the HOA has the burden of proof on its breach claim, it must conclusively prove all of the

---

[4] *See also United States v. Scott,* 788 F. Supp. 1555, 1562 (D. Kan. 1992); *Casa Marie, Inc. v. Superior Court,* 752 F. Supp. 1152, 1168 (D.P.R.1990), *vacated on other grounds,* 988 F.2d 252 (1st Cir. 1993); *Hill v. Community of Damien of Molokai,* 121 N.M. 353, 911 P.2d 861, 871 (1996); *Deep East Texas*, 877 S.W.2d at 557; *Broadmoor San Clemente Homeowners Ass'n v. Nelson,* 25 Cal. App. 4th 1, 30 Cal. Rptr. 2d 316 (1994); *Rhodes v. Palmetto Pathway Homes, Inc.,* 303 S.C. 308, 400 S.E.2d 484 (1991)).

elements of its cause of action as a matter of law. TEX. R. CIV. P. 166a(c); *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 566 (Tex. 2001); *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222-23 (Tex. 1999). To establish a violation, the HOA must show that the deed restriction is applicable and valid with respect to Mr. Tarr's use of the home and that that use is not a permissible "residential use." As discussed in Part A below, the HOA failed to carry this burden. Paragraph 4.1 expressly provides that the residential use restriction does not exclude uses, such as group homes, that are protected by federal and state law. As courts throughout the nation routinely hold, use of a property as a group home constitutes residential use. Moreover, the HOA's factual assertions that the group home is an impermissible "for profit" duplex are unfounded and, in any case, immaterial.

The HOA will undoubtedly argue that the trial court's first partial summary judgment bars any argument that federal and state law protects group homes like Mr. Tarr's. But, as discussed in Part A, paragraph 4.1 expressly incorporates these statutory protections into the deed restriction itself; protected uses, like group homes, are deemed to be permitted residential uses and, thus the HOA bore the summary judgment burden of conclusively proving that the WRH was not protected by federal and state law. Further, as discussed in Part B, even if these protections were not incorporated into the deed restriction itself, the federal and state protections would nevertheless prohibit enforcement against Mr. Tarr's group home, and Mr. Tarr's

18

evidence creates a genuine issue of material fact with respect to whether the residents of Westlake Recovery House are handicapped.

A. **The HOA did not meet its burden of conclusively proving that the Westlake Recovery House residents were not authorized to remain "by any state or federal law" and, thus that Mr. Tarr's group home violated the deed restriction.**

The HOA claims that Mr. Tarr has breached paragraph 4.1 of the deed restrictions "by turning his home, a single family residence, into a for-profit duplex." CR304. Paragraph 4.1 provides:

> <u>Residential Use</u>. All Lots shall be improved and used solely for single family residential use, inclusive of a garage, fencing and other such Improvements as are necessary or customarily incident to residential use. No building, outbuilding or portion of either may be built on a Lot for use as income-producing property (i.e., for lease to tenants who do not occupy an entire Lot). A "single family" shall be defined as any number of persons related by blood, marriage or adoption, and shall also include foster children and domestic servants. *This Declaration shall not, however, exclude from a Lot any person who is authorized to so remain by any state or federal law.*

CR16, ¶4.1 (emphasis added). As the party seeking to enforce the deed restriction, the HOA has the burden of proving conclusively that the deed restriction is valid and enforceable against Mr. Tarr and that his use of the property as a group home breached the deed restriction. *Gillebaard v. Bayview Acres Ass'n,* 263 S .W.3d 342, 347 (Tex. App—Houston [1st Dist.] 2007, pet. denied) ("A party seeking to enforce a deed restriction has the burden of proof at trial to show that the restrictions are

19

valid and enforceable."); *City of Pasadena v. Gennedy,* 125 S.W.3d 687, 695 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (same); *Sharp v. deVarga*, No. 03-05-00550-CV, 2010 WL 45871, at \*3 (Tex. App.—Austin Jan. 8, 2010, pet. denied) (mem. op.) (same); *Hicks v. Falcon Wood Prop. Owners Ass'n*, No. 03-09-00238-CV, 2010 WL 3271723, at \*7 (Tex. App.—Austin Aug. 19, 2010, no pet.) (mem. op.). Thus, the HOA's summary judgment burden was to establish conclusively that Mr. Tarr's use of the property as a group home for recovering alcoholics and drug addicts is not a permitted "residential use" within the meaning of paragraph 4.1.

Yet not only does the evidence the HOA asserts supports this claim fail to *conclusively* establish a breach of the deed restriction, it is not sufficient to establish even a *prima facie* case for breach. The HOA points to Mr. Tarr's Answer, which states that he is "operating a sober house, group home." CR 304. It also points to Tarr's deposition testimony that he receives $6,000 to $8,000 a month from the group home residents. The HOA asserts that this is conclusive evidence that the group home is "a for-profit endeavor." CR304. The HOA's motion does not point to any additional evidence to support its breach claim. CR304-05.

As discussed below, this evidence is woefully insufficient to carry the HOA's summary judgment burden. First, the restriction does not and cannot prohibit group homes like Mr. Tarr's (Part 1). Moreover, the HOA's assertions that the group home is a "for profit duplex" (Part 2) are unsupported by the evidence and, in any case,

immaterial to the question of whether Mr. Tarr's use of the home as a group home is a permissible use under paragraph 4.1.

### 1. The HOA failed to meet its burden—the Texas and Federal Fair Housing Acts and supporting case law protect group homes such as Mr. Tarr's.

Courts universally recognize that residential use restrictions are not valid or enforceable against and do not prohibit group homes for recovering alcoholics and drug addicts like Mr. Tarr's. *Deep East Texas*, 877 S.W.2d at 561-62; *United States v. Wagner*, 940 F. Supp. at 979 ("Since the FHA Amendments took effect, courts have made clear that single family deed restrictions cannot be used to exclude group homes for disabled persons from single family neighborhoods."); *Martin*, 843 F. Supp. at 1326; *Scott*, 788 F. Supp. at 1562; *Casa Marie, Inc. v. Superior Court*, 752 F. Supp. 1152, 1168 (D.P.R. 1990), *vacated on other grounds*, 988 F.2d 252 (1st Cir. 1993); *Hill*, 911 P.2d at 871; *Deep East Texas*, 877 S.W.2d at 557; *Broadmoor San Clemente Homeowners Ass'n v. Nelson*, 25 Cal. App. 4th 1, 30 Cal. Rptr. 2d 316 (1994); *Rhodes v. Palmetto Pathway Homes, Inc.*, 303 S.C. 308, 400 S.E. 2d 484 (1991). Indeed, the HOA recognized this fact when it expressly stated that its own residential use restriction does not exclude any person protected by federal or state law, which includes group home residents under the FHA.

The paragraph 4.1 use limitation expressly provides that it cannot be used or interpreted to exclude uses protected by state and federal law. The covenant

21

provides that the residential use restriction "shall not, however, exclude" any person whose presence is protected by federal and state law. CR16, ¶ 4.1. Thus, to establish the deed restriction's validity, enforceability, and breach against Mr. Tarr, the HOA must demonstrate that—considering the exemption for group homes included in paragraph 4.1—Mr. Tarr's use of the home is not a permitted "residential use."

Indeed, even in cases where, unlike here, the covenant does not include express language including uses protected by federal and state law within the meaning of "residential use," courts nevertheless hold that group homes fall within the meaning of single-family residential use. *See Permian Basin Centers for Mental Health & Mental Retardation v. Alsobrook*, 723 S.W.2d 774, 777 (Tex. App.—El Paso 1986, writ ref'd n.r.e.) (holding that proposed group home for mentally retarded adults did not violate single family residential use). Numerous decisions from other state and federal courts have similarly concluded that persons living together in residential group homes constitute a "single family" and that the operation of such homes constitutes a permissible "residential use" of property. *See, e.g.*, *City of Livonia v. Dep't of Soc. Servs.*, 423 Mich. 466, 528, 378 N.W.2d 402, 431 (1985); *Concord Estates Homeowners Ass'n, Inc v. Special Children's Foundation, Inc.*, 459 So.2d 1242 (La. App. 1984); *Knudtson v. Trainor*, 216 Neb. 653, 656-57, 345 N.W.2d 4, 6 (1984) ("[T]he operation of a group home is a residential purpose within the meaning of a covenant that the property shall be used only for residential

22

purposes."); *Crane Neck Ass'n, Inc v. NYC/Long Island Co Services Group,* 92 A.D.2d 119, 460 N.Y.S.2d 69 (1983), *aff'd* 61 N.Y.2d 154, 472 N.Y.S.2d 901, 460 N.E.2d 1336 (1984); *Welsch v. Goswick,* 130 Cal. App.3d 398, 181 Cal. Rptr. 703 (1982); *Costley v. Caromin House, Inc.,* 313 N.W.2d 21 (Minn. 1981); *J.T. Hobby & Son, Inc v. Family Homes of Wake Cty., Inc.,* 302 N.C. 64, 274 S.E.2d 174 (1981); *Crowley v. Knapp,* 94 Wis. 2d 421, 288 N.W.2d 815 (1980); *State ex rel. Region II Child & Family Services, Inc v. Eighth Judicial Dist. Court,* 187 Mont. 126, 609 P.2d 245 (1980); *Berger v. State,* 71 N.J. 206, 364 A.2d 993 (1976).

The case here is even easier because the statutory protections were made part of the of "residential use" deed restriction. Paragraph 4.1 expressly provides that it does not exclude any person whose presence is protected by federal and state law, which includes the residents of Westlake Recovery House. CR16, ¶4.1. As such, the HOA cannot prove that Mr. Tarr has breached the deed restriction unless it can show (or on summary judgment, conclusively show) that the persons living in the house fall outside of the limitations of paragraph 4.1.

But the HOA has manifestly failed (or even attempted) to establish that Mr. Tarr's use of the property does not qualify as a group home for handicapped persons. In fact, the only evidence the HOA proffered to show breach was Mr. Tarr's own representations and testimony that he is operating a "sober house, group home" for recovering addicts. CR304. Far from demonstrating breach, this shows that Mr.

23

Tarr's use falls squarely within a permissible "residential use" under paragraph 4.1. The HOA offered no evidence, much less conclusive evidence that Mr. Tarr's use falls outside this limited definition. Indeed, all of the evidence before the trial court shows that the residents of Westlake Recovery House are handicapped and protected by the federal and state FHAs. *See* Part B, below. Mr. Tarr testified that to be admitted to Westlake Recovery House, residents must have a "handicap" as defined by the FHA by reason of a drug or alcohol addiction for which they are seeking recovery. CR294-95. Further, each resident testified that he is a recovering alcoholic and/or drug addict and that his addiction to alcohol or drugs caused severe harm and impaired his ability to function normally. SCR23-37. And each testified that without proper support, they would relapse. *Id.* Mr. Tarr's use of his property as a group recovery home for handicapped men is clearly within paragraph 4.1's use restriction. At the very least, there is a fact question, precluding summary judgment.

> **2.     The HOA's assertion that Mr. Tarr's group home is a "for profit duplex" is immaterial to residential use under paragraph 4.1.**

As noted above, the HOA's only contention regarding breach is that Mr. Tarr's use of the home as a group home violates paragraph 4.1's residential use restriction because it is a "for profit endeavor." CR304-05. According to the HOA, Mr. Tarr testified "that this is a for-profit endeavor in which he is making at least $6,000 to $8,000 per month." CR304. First, this is a misrepresentation of Mr. Tarr's

actual testimony. Rather, Mr. Tarr testified that on average Westlake Recovery House charges residents $600 to $800 per month, meaning that, with ten residents, Westlake Recovery House *gross* collections are between $6,000 and $8,000 each month. CR415. Mr. Tarr testified that the costs of operating Westlake Recovery House are approximately $7,200 per month and that Westlake Recovery House has not yet broken even. SCR20.

More importantly, however, the HOA's assertion that Mr. Tarr's acknowledgement that he receives compensation for operating the group home is immaterial to the HOA's breach claim. To begin with, the term "for profit" does not appear anywhere in this restriction. And although the second sentence refers to "income producing property," this reference prohibits *construction* of a building (or portion thereof) on the lot for the purpose of producing income, for example, building a guest house for rent.[5] It does not by its terms prohibit *use* of the property to generate income (or even "profit"). Indeed, paragraph 4.2 provides that the property may be used for business or trade under certain conditions (none of which

---

[5] Indeed, this portion of paragraph 4.1 addresses the construction of a structure on the lot for the purpose of producing income. "No building, outbuilding or portion of either may be built on a Lot for use as income producing property (*i.e.*, for lease to tenants who do not occupy an entire Lot)." CR16, ¶4.1. As in *Deep East Texas* and *Permian Basin*, this portion of the restriction addresses the architectural structure, not permitted uses; it is intended to prevent the construction of a duplex, apartment building, or other multi-family structure. *Deep East Texas*, 877 S.W.2d at 558; *Permian Basin*, 723 S.W.2d at 777.

25

are alleged to have been violated here).  Presumably the HOA does not contend that permitted businesses under paragraph 4.2 must operate without income or *pro bono*.

Moreover, courts routinely hold that the fact that a group home operator receives money from the residents does not make the use non-residential.  As these courts explain:

> the incident necessities of operating a group home such as maintaining records, filing accounting reports, managing, supervising, and providing care for individuals in exchange for monetary compensation are collateral to the prime purpose and function of a family housekeeping unit. Hence, these activities do not, in and of themselves, change the character of a residence from private to commercial.

*Rhodes,* 400 S.E.2d at 485-86; *Jackson v. Williams,* 714 P.2d 1017, 1022 (Okla. 1985) ("The essential purpose of the group home is to create a normal family atmosphere dissimilar from that found in traditional institutional care for the mentally handicapped.  The operation of a group home is thus distinguishable from a use that is commercial—i.e., a boarding house that provides food and lodging only—or is institutional in character."); *see also Hill*, 911 P.2d at 866-67 ("The Community's activities in providing the group home for the residents do not render the home a nonresidential operation such as a hospice or boarding house."); *Gregory v. State Dep't of Mental Health, Retardation & Hosps.,* 495 A.2d 997, 1001-02 (R.I. 1985) (finding the group home to be residential and not commercial in nature, and listing cases from other jurisdictions reaching the same conclusion); *Blevins v.*

26

*Barry–Lawrence County Ass'n for Retarded Citizens,* 707 S.W.2d 407, 408-09 (Mo. 1986) (*en banc*) (same, listing jurisdictions); *City of Livonia*, 378 N.W.2d at 431 (holding that the fact that residents may be required to pay for services does not "transform the nature of the activities conducted in the home from residential to commercial."). Indeed, the FHA "does not require group home providers to give away their services, to operate at a loss, nor to declare a particular tax status. If it did, there would be far fewer residences for disabled persons than there presently are." *United States v. City of Chicago Heights*, 161 F. Supp. 2d 819, 844 (N.D. Ill. 2001).

Even if the deed restrictions prohibited the use of a residence as "income producing property" (and it does not), it would violate the anti-discrimination provisions of the Fair Housing Act because it has the effect of excluding congregate living arrangements for persons with handicaps. In *Martin v. Constance*, the court confronted a deed restriction that forbade use of the property "for trade or business of any kind." 843 F. Supp. 1321, 1323 (E.D. Mo. 1994). Referring to earlier cases and the legislative history of the Fair Housing Act, the court found that the plaintiffs established a violation of the Act's anti-discrimination provisions because the prohibition effectively forbade the operation of group homes. *Id.* at 1325; *see also Advocacy Ctr. for Persons with Disabilities, Inc. v. Woodlands Estates Ass'n, Inc.*,

192 F. Supp. 2d 1344, 1350 (M.D. Fla. 2002); *Dornbach v. Holley*, 854 So. 2d 211, 212 (Fla. Dist. Ct. App. 2002).

Similarly, the HOA's assertions that the house is an impermissible "duplex" are unfounded and immaterial. There is no evidence—much less conclusive evidence—that the house in question fails to satisfy the architectural requirements of a "single family" residence. First, contrary to the HOA's assertions, CR304, Mr. Tarr has not testified that the home is structurally a duplex or that it has ever been leased and occupied as a duplex. Second, there has been no pleading, evidence, or even suggestion that the exterior of the home does not comport with the standards of a single-family residential neighborhood. The photographs of the home do not reveal anything but a single-family residence. CR370-76. Nor is there conclusive evidence that the residence has separate entrances or separate apartments. The HOA has not submitted any inspection report, evidence of exterior or interior alterations made to the home, or any other evidence that the structure of the home has been altered such that it is no longer a single-family style residence within the meaning of paragraph 4.1.

The only mention of "duplex" in the record evidence is in an Internet advertisement that offers to lease the home and refers to the accommodations as a duplex or townhouse. CR372-74. But this is not evidence (and certainly not conclusive evidence) that the house is actually, structurally a duplex that would

violate the building and architectural restrictions of paragraph 4.1. But even if this advertisement could be considered some evidence that the home actually is a duplex, it certainly is not conclusive. Other advertisements (also appended to the HOA's application)—specifically those for Westlake Recovery Home, the use the home is now put to—do not characterize the accommodations as a "duplex." CR368-71, 376. Rather, these advertisements characterize the home as a single household unit and describe the management of the home as a group home to facilitate recovery from debilitating alcohol and drug additions. *Id.* One of the defining characteristics of a group home is that it provides a communal, family-like household. *See, e.g.*, *Rhodes,* 400 S.E.2d at 485-86; *Jackson*, 714 P.2d at 1022. Thus, at the very least, there is a fact issue with respect to the physical structure of the home.

Indeed, the HOA motion makes clear that the problem it has with Mr. Tarr's use of the home is not its physical structure, but rather, that recovering alcoholics and drug addicts live there. The HOA's duplex assertion is that the home is leased to and occupied by unrelated and separate household units. But here too, there is no evidence that this is the case. That is, there is no evidence that the house is occupied as a duplex with independent household units. Indeed, all of the record evidence supports the opposite conclusion that it is a group home occupied and operated as a single household unit. Courts routinely hold that a group home is a single household unit and falls within "single family" residential restrictions. *See Hill*, 911 P.2d at

29

869 (noting that courts "have consistently held that restrictive covenants mandating single-family residences do not bar group homes in which the occupants live as a family unit"); *Rhodes,* 400 S.E.2d at 485-86 (explaining that the "prime purpose and function" of group home is "a family housekeeping unit"); *Jackson*, 714 P.2d at 1022 ("The essential purpose of the group home is to create a normal family atmosphere dissimilar from that found in traditional institutional care for the mentally handicapped. The operation of a group home is thus distinguishable from a use that is commercial—i.e., a boarding house that provides food and lodging only—or is institutional in character."); *City of Livonia*, 378 N.W.2d at 431 ("Numerous decisions from other states have similarly concluded that persons living together in residential group homes constitute a 'single family' or that the operation of such homes constitutes a residential use of property."); *see also Maull v. Community Living for the Handicapped, Inc.,* 813 S.W.2d 90, 92 (Mo.Ct.App.1991) ("[G]roup homes where the residents function in a family setting, interdependent on one another in carrying out the daily operation and routine of the residence meet the single family requirement of the covenant."), *transfer denied,* (Aug. 8, 1991); *State ex rel. Region II Child & Family Servs., Inc. v. District Court*, 187 Mont. 126, 609 P.2d 245, 248 (1980) (holding group home constituted family as required by covenant).

As discussed above, paragraph 4.1 makes clear that uses, such as group homes, that are protected by federal and state law are not excluded by the use restriction. The interior structure of the house is irrelevant to the protections provided by federal law and as incorporated into paragraph 4.1 itself. Simply labeling it as a "duplex" is not evidence that the group home is not a residential use within the meaning of paragraph 4.1.

**B.    The trial court erred in granting summary judgment with respect to the affirmative defense that statutory law prohibits enforcement of the deed restriction.**

As discussed above, by stating that statutorily protected uses like group homes are not excluded from permissible uses under the deed restrictions, the deed restrictions assign to the HOA the burden of proving that the accused use of the property is not protected by federal and state law. But even if paragraph 4.1 was silent on this point, federal and state law would still prohibit the enforcement of any deed restriction that has the effect of excluding group homes like Mr. Tarr's from residential neighborhoods. That is, Mr. Tarr has an affirmative defense that federal and state law prohibits the use of any restrictive covenant to prohibit his use of the house as a group home for handicapped persons.

The trial court, however, erroneously granted summary judgment against Mr. Tarr, concluding that there was no evidence that the residents of Westlake Recovery House are handicapped or disabled under the statutes. Importantly, the only

31

argument the HOA made in the trial court that the federal and state law protections for group homes did not apply to Mr. Tarr's group home is that there was no evidence that the residents were handicapped under the FHA. CR304. Other than merely asserting there is no evidence that the residents of Westlake Recovery House are handicapped, the HOA did not explain why Mr. Tarr's affidavit is not some evidence of handicap. Indeed, the HOA did not reply to Mr. Tarr's response or raise any objection to Mr. Tarr's affidavit in which he testified that each of the residents meets the statutory definitions of "handicap" and "disability." CR294-95.

The Fair Housing Act defines "handicap" as:

> (1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such impairment, or (3) being regarded as having such an impairment.[6]

42 U.S.C. § 3602(h). Similarly, the Texas Fair Housing Act defines "Disability" as "a mental or physical impairment that substantially limits at least one major life activity, a record of the impairment, or being regarded as having the impairment." TEX. PROP. CODE § 301.003(6).[7]

---

[6] The FHA also provides that "handicap" does not include those who are currently and illegally using a controlled substance. 42 U.S.C. § 3602(h). Residents of Westlake Recovery House must undergo substance testing to ensure that they are not currently using drugs or alcohol. CR294-95.

[7] The American with Disabilities Act defines "disabled" in the same way. 42 U.S.C. § 12102 ("In order to establish disabled status under the ADA, a plaintiff must demonstrate: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such impairment.").

32

Alcoholism and drug addiction are "impairments" as a matter of law. *See, e.g.*, *Oxford House, Inc. v. City of Baton Rouge, La.*, 932 F. Supp. 2d 683, 688-89 (M.D. La. 2013); 24 C.F.R. § 100.201(a)(2) (providing that impairment includes drug addiction and alcoholism). Indeed, the definition of handicap in the Fair Housing Act was taken directly from section 504 of the Rehabilitation Act, which has consistently been interpreted by the courts to cover alcoholics and drug addicts. *Oxford House, Inc. v. Twp. of Cherry Hill*, 799 F. Supp. 450, 459 (D.N.J. 1992). The House Report accompanying the Fair Housing Act stated, "[t]he Committee intends that the definition be interpreted consistent with regulations clarifying the meaning of the similar provision found in section 504 of the Rehabilitation Act." H.R. Rep. No. 711, 100th Cong., 2d Sess. 22 (1988), *reprinted in* 1988 U.S. Code Cong. & Admin. News 2173, 2183.

And the HOA does not appear to contest that there is evidence that the residents of Westlake Recovery House are impaired recovering alcoholics and drug addicts. Nor could it; there is clearly sufficient evidence to create a fact issue regarding whether the residents are impaired. Mr. Tarr testified that they are indeed recovering alcoholics and drug addicts. CR294-95. This is some evidence and at least creates a genuine issue of fact. Further, the residents themselves testified about their impairments due to alcohol and drug dependence. SCR23-37. Rather, the contested issue under the first and second FHA definitions of "handicap" is whether

the residents' impairments substantially limit them in a major life activity. As discussed below, the summary judgment evidence demonstrates that there is at least a genuine issue of material fact as to whether the Westlake Recovery House residents' impairments substantially limit them in a major life activity, qualifying them under the first statutory definition. Further, the evidence demonstrates that there is at least a genuine issue of material fact as to whether the HOA and neighbors regarded the Westlake Recovery House residents as impaired, qualifying the residents under the third statutory definition.

In reviewing the summary judgment evidence, the Court must review the evidence in the light most favorable to Mr. Tarr, disregarding all contrary evidence and inferences. *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997). Summary judgment is improper if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. TEX. R. CIV. P. 166a(i); *see also Havner,* 953 S.W.2d at 711. Here, the evidence is much more than a scintilla.

## 1. The evidence indicates that the Westlake Recovery House residents' impairments limit a major life activity.

In interpreting the FHA, the United States Supreme Court has held that the FHA has a "'broad and inclusive' compass" and receives a correspondingly "generous construction." *City of Edmonds v. Oxford House, Inc.,* 514 U.S. 725, 731, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995). Indeed, some courts have concluded that

34

alcoholics and drug addicts living in group recovery homes are handicapped within the statutory definition *as a matter of law*. *See, e.g., Sullivan v. City of Pittsburgh*, 811 F.2d 171, 182 (3d Cir. 1987) ("case law establishes that alcoholics are handicapped within the meaning of § 504"); *Rodgers v. Lehman,* 869 F.2d 253, 258 (4th Cir. 1989) ("Alcoholism is a handicapping condition within the meaning of the Act."); *Crewe v. U.S. Office of Pers. Mgmt.,* 834 F.2d 140, 141-42 (8th Cir. 1987) ("there can be little doubt that alcoholism is a handicap for the purposes of the Act"); *Corp. of Episcopal Church in Utah v. W. Valley City*, 119 F. Supp. 2d 1215, 1219 (D. Utah 2000) ("It is well established that individuals recovering from drug or alcohol addiction are handicapped under the Act."); *Oxford House, Inc. v. Town of Babylon,* 819 F. Supp. 1179, 1182 (E.D.N.Y. 1993); *Davis v. Bucher,* 451 F. Supp. 791, 796 (E.D. Pa. 1978) ("persons with histories of drug use, including present participants in methadone maintenance programs, are 'handicapped individuals' within the meaning of the statutory and regulatory language"); *Caron Foundation of Florida v. City of Delray Beach*, 879 F. Supp. 2d 1353, 1364 (S.D. Fla. 2012); *Human Res. Research & Mgmt. Grp., Inc. v. Cnty. of Suffolk*, 687 F. Supp. 2d 237, 251 (E.D.N.Y. 2010). By the very nature of their impairments, addicts are dependent on substances and will relapse in the absence of such care. *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown* ("*RECAP*"), 294 F.3d 35, 47-48 (2d Cir. 2002). As the court in *Oxford House, Inc. v. Town of Babylon* explained, "Recovering

35

alcoholics or drug addicts require a group living arrangement in a residential neighborhood for psychological and emotional support during the recovery process." 819 F. Supp. at 1183.

In any case, the record evidence here falls well within what courts hold to be sufficient to demonstrate that the residents of group homes are handicapped. As the Second Circuit held in *RECAP*, admission to a group recovery home like Westlake Recovery House is itself some evidence that the resident is handicapped under the statute. 294 F.3d at 47-48 (relying on admission criteria to determine that recovering alcoholics residing in a "halfway house" were statutorily "handicapped" and "disabled"); *see also Wagner v. Fair Acres Geriatric Center,* 49 F.3d 1002, 1010 (3d Cir.1995) (observing that "no one would be able to meet a nursing home's admissions requirements in the absence of some handicapping condition necessitating nursing home care"); *McKivitz v. Twp. of Stowe*, 769 F. Supp. 2d 803, 822 (W.D. Pa. 2010); *see also Twp. of Cherry Hill*, 799 F. Supp. at 459-60 (holding that individualized evidence for each resident is not necessary to demonstrate impairment of a major life activity). As another federal court explained:

> In the FHA context, the issue of "handicap" is sometimes examined not only by reference to the characteristics of the *individuals* in question, but also by reference to the criteria for admission to the *facility* at issue. In other words, an individual can sometimes establish that he or she is "handicapped" within the meaning of the FHA simply by demonstrating that he or she resides in a facility that only admits "handicapped" individuals.

36

*McKivitz*, 769 F. Supp. 2d at 822 (emphasis in original); *see also Lakeside Resort Enterprises, LP v. Board of Supervisors of Palmyra Township,* 455 F.3d 154, 156 n.5 (3rd Cir.2006); *MX Group, Inc. v. City of Covington,* 293 F.3d 326, 338-39 (6th Cir. 2002); *United States v. Southern Mgmt. Corp.,* 955 F.2d 914, 920-23 (4th Cir. 1992). Even where the baseline for admission to a recovery house or program is somewhat less than a demonstration of an inability to live independently without suffering a relapse, courts still conclude that there is sufficient evidence to establish a genuine issue of material fact. *See, e.g.*, *MX Group,* 293 F.3d at 338-39 (holding that the ADA applied even where admittance to facility was not directly linked to impairment); *Jeffrey O. v. City of Boca Raton*, 511 F. Supp. 2d 1328, 1334-35 (S.D. Fla. 2007) (holding that possibility of relapse was evidence of handicap).

Further, the description of the kind of support services residents would receive at a recovery group home, such as random substance testing, participation in recovery meetings, on-site managers, accountability partners, and transportation, demonstrates that they are limited in major life activities, including "caring for oneself." *See Valley Hous. LP v. City of Derby*, 802 F. Supp. 2d 359, 385 (D. Conn. 2011) (finding that description of services for prospective residents with HIV/AIDS demonstrated that they were substantially limited); *RECAP*, 294 F.3d at 47-48

37

(inability to "caring for one's self" without relapse is necessarily a limitation in a major life activity).[8]

Indeed, by seeking treatment for an alcohol or drug-dependency, the resident "is tacitly, if not expressly, admitting a loss of control over that problem" and, thus, "the problem rises to the level of handicap deserving of protection under [the Federal Rehabilitation Act]." *Burka v. New York City Transit Auth.*, 680 F. Supp. 590, 600 n.18 (S.D.N.Y. 1988). Their "addiction substantially limit[s] their ability to live independently or with their families." *Jeffrey O.*, 511 F. Supp. 2d at 1335.

This focus on the nature of the group home and the characteristics of the residents accepted to live there makes sense considering that the resident population is not static. As residents progress in their recovery, they will move out of a group home, and new residents will take their places. Thus, a finding with respect to a particular individual resident may not be relevant once that resident moves out. Thus, the proper focus should be on the nature of the group home.

In his first affidavit, Mr. Tarr testified that to be admitted to Westlake Recovery House, an applicant must qualify as having a "handicap" or "disability"

---

[8] Congress left the definition of "major life activities" to the Department of Housing and Urban Development (HUD), the agency responsible for administering the FHA. 42 U.S.C. § 3608. HUD's parameters for interpreting the Act are extremely broad; caring for oneself, eating, walking, breathing, learning, working, seeing, hearing, and performing manual labor are all "major life activities." 24 C.F.R. § 100.201 (1995); *see also* Laurie C. Malkin, *Troubles at the Doorstep: The Fair Housing Amendments Act of 1988 and Group Homes for Recovering Substance Abusers*, 144 U. PA. L. REV. 757, 827 (1995).

38

under the applicable statutory definitions. CR294-95, ¶¶5-8. Further, Mr. Tarr testified that the residents must submit to random substance testing and participate in in-house and outside recovery meetings. CR294, ¶3. Mr. Tarr also avowed that Westlake Recovery House provides "a live-in manager, assigned accountability partners, transportation assistance to outside recovery meetings, and other services consistent with the property's primary purpose as a drug and alcohol recovery group home." CR294, ¶4.

As discussed above, this is precisely the sort of evidence that courts routinely hold to be sufficient evidence of impairment that substantially limits a major life function. Here, as in *RECAP*, admission to the group recovery home requires that the applicant have a statutory handicap. CR294-95, ¶¶3-8; *RECAP*, 294 F.3d at 47-48 (2d Cir. 2002).

This is certainly more than a scintilla of probative evidence that the residents of Westlake Recovery House are handicapped under the statutory definition and, thus, is sufficient in itself to avoid summary judgment on this issue. Nevertheless, the Court can consider additional evidence proffered in response to the second motion for partial summary judgment on the HOA's breach claim.[9] This evidence

---

[9] Because the first partial summary judgment was interlocutory, the trial court could have reconsidered the summary judgment on the affirmative defenses and considered the later-offered evidence, including Mr. Tarr's second affidavit and the affidavits of the Westlake Recovery House residents. SCR19-37. *See Ohrt v. Union Gas Corp.*, 398 S.W.3d 315, 327-28 (Tex. App.—Corpus Christi 2012, pet. denied) ("A partial summary judgment is interlocutory and thus the trial court retains the right to reconsider it until it enters a final judgment."); *Fabio v. Ertel*, 226 S.W.3d 557,

further supports the fact that the Westlake Recovery House residents are handicapped.

Each resident testified that he is a recovering alcoholic and/or drug addict but no longer uses alcohol or drugs. SCR23-37. And each testified that without proper support, they would relapse. *Id.* Moreover, each testified that his addiction to alcohol or drugs caused severe harm and impaired his ability to function. *Id.* Brad Buhler testified that:

> Before I began my recovery, my addiction to alcohol caused me and my family continuing harm. As a result of my addiction, I had two DUI's, my drivers license [sic] was suspended, lost over $500,000 financially, and served fourteen months in prison.

SCR23, ¶4. Kole Coward testified similarly to Buhler, noting that, for three years immediately before beginning his recovery for addiction to marijuana, Xanax, and alcohol, he was "homeless, lost three jobs, lost all my clothes, and over $5,000." SCR25, ¶4. Jackson Hanks testified that, as a result of his former 10-year heroin addiction, he "lost all of my possessions, cost my family over $1,000,000 in losses, and spent six months in prison with a felony for possessing an illegal drug." SCR27,

---

560-61 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Clark v. Strayhorn*, 184 S.W.3d 906, 909 (Tex. App.—Austin 2006, pet. denied); *Loy v. Harter*, 128 S.W.3d 397, 409 (Tex. App.—Texarkana 2004, pet. denied); *see also Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex. 1993) (per curiam) ("The trial court also retains continuing control over interlocutory orders and has the power to set those orders aside any time before a final judgment is entered."). Further, the trial court's order granting the HOA's second motion for partial summary judgment indicates that it considered Mr. Tarr's response, which included his second affidavit and the affidavits of the residents of Westlake Recovery House. CR496.

¶¶2 & 4. Daniel Kelly likewise testified that, before his recovery began, he abused alcohol for four years, leading to the loss of "a successful job, caused two car accidents, was arrested for driving while intoxicated, lost over $50,000 financially, and ended three relationships with girlfriends." SCR32, ¶¶2 & 4. In all, seven residents testified by affidavit, each with his own similar, but unique and personal, story about how substance abuse had severely impacted his life, and how the recovery home has changed that.

> Living in the Westlake Recovery House is critical to my successful recovery from my addiction. The structured environment, services, and support from the house and other addicts helps me avoid relapsing into the use of alcohol. The members of the group living in the house are like a family, and we support each other. It is also very helpful to me to live in an ordinary residential neighborhood where, I can feel like an ordinary person rather than merely another alcoholic.

SCR23; SCR25, 27, 29, 32-33, 34, 36-37.

Courts hold that inability to remain sober without support constitutes a substantial limitation in a major life activity. *See, e.g*, *Jeffrey O.*, 511 F. Supp. 2d at 1346. Similarly, the loss of work or family relationships constitutes a qualifying substantial limitation. For example, in *Oxford House v. City of Baton Rouge*, the court found a substantial limitation based on testimony that "alcoholics, drug addicts, we do not know how to live," and that living in a residential recovery home teaches them "to become accountable [and] productive members of society." 932 F.

41

Supp. 2d at 689. In *Jeffrey O.*, the court found that the residents of a group home for recovering alcoholics and drug addicts were handicapped because:

> The recovering individuals testified about the negative impact their additions had on their lives, including preventing them from caring for themselves or keeping a home at times, and losing jobs and families.

511 F. Supp. 2d at 1346; *see also United States v. Borough of Audubon, N.J.*, 797 F. Supp. 353 (D.N.J. 1991) (finding that testimony of the residents demonstrated that their handicap, drug addiction and/or alcoholism, substantially limited major life activities).

Here, the residents of Westlake Recovery House have provided precisely this kind of testimony to show that alcoholism or drug addiction substantially limits a major life activity. Thus, the evidence creates a genuine issue of material fact on this issue. Thus, summary judgment on the HOA's breach claim was improper and the trial court's judgment should be reversed.

### 2. There is a fact issue with respect to whether the residents are "regarded as disabled" under the third definition.

In addition to meeting the first statutory definition of "handicap," the evidence also shows that the residents of Westlake Recovery House were regarded as disabled by the HOA and the neighbors, satisfying the third definition. Indeed, the fact that the residents are recovering alcoholics and drug addicts is the impetus for the HOA's suit to enjoin Mr. Tarr's use of his property as a group home for such individuals.

42

*See, e.g.,* CR304 (stating that "there is no dispute that Tarr is violating the Declarations as his own pleadings in this case state that 'Tarr is operating a sober house, group home"); SCR20-21 (relating email from HOA president stating that the reason for legal action against Mr. Tarr was because he was operating a "halfway house"). "It is well documented that community residents often oppose the opening of drug rehabilitation programs . . . in their neighborhoods because of fears that drug addicts will bring increased criminal activity or an unsightly and dangerous element to the neighborhood." *A Helping Hand, L.L.C. v. Baltimore Cnty., MD.*, No. CIV.A. CCB-02-2568, 2005 WL 2453062, at *11 (D. Md. Sept. 30, 2005); *see also, e.g.*, *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 49 (2nd Cir. 1997); *BAART v. City of Antioch*, 179 F.3d 725, 729 (9th Cir. 1999); *MX Group*, 293 F.3d at 329.

Federal regulations provide that "regarded as having an impairment means" the person:

> (1) Has a physical or mental impairment that does not substantially limit one or more major life activities but that is treated by another person as constituting such a limitation;
>
> (2) Has a physical or mental impairment that substantially limits one or more major life activities only as a result of the attitudes of other toward such impairment; or
>
> (3) Has none of the impairments defined in paragraph (a) of this definition but is treated by another person as having such an impairment."

43

24 C.F.R § 100.201(d). As federal courts have explained, under the "regarded as" prong, rather than trying to determine whether an individual presently suffers from a substantially limiting impairment, "the Court must determine whether Defendants perceived Plaintiff's clients as being disabled and discriminated against them on that basis." *MX Group*, 293 F.3d at 340 (citing *Parry v. Mohawk Motors of Michigan, Inc.,* 236 F.3d 299, 310 (6th Cir. 2001)); *A Helping Hand*, 2005 WL 2453062, at *14. Similarly, the Fourth Circuit has explained that a handicap exists where an impaired person's inability to obtain housing was due to the "negative reactions of others to the impairment" regardless of the absence of an actual limitation on that person's mental or physical capabilities. *Southern Mgmt. Corp.*, 955 F.2d at 918 ("The clients are clearly impaired, and their ability to obtain housing (a major life activity) was limited by the attitudes of the SMC officials. Thus, we conclude that the clients qualify as having a handicap under the general definition at 42 U.S.C. § 3602(h)(1)-(3)." (citing *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 283, 107 S. Ct. 1123, 1128, 94 L. Ed. 2d 307 (1987))). Because the plaintiffs had been denied housing on the basis of their status as drug addicts and alcoholics, the court reasoned that their inability to obtain housing (a major life activity) due to the attitudes of others qualified them as handicapped under the third prong of the definition ("being regarded as having such an impairment"). *Id.*

The record contains ample evidence that the HOA and neighborhood home owners regarded the group home residents as disabled and discriminated against them on that basis. The materials attached to the HOA's motion demonstrate that the HOA knew that the residents are recovering addicts, and therefore knew they are handicapped. CR366-77. In fact, the evidence shows that the HOA's actions in bringing this lawsuit were intended to discriminate against the recovering addicts at the Recovery House. SCR20-21. Prior to filing suit, the HOA president, Steve Portnoy, sent an email to a Lantana homeowner and representatives of the HOA's management company stating that

> This has now escalated past the point of what is even remotely acceptable for our neighborhood. A halfway house? This has to be shut down and quickly. Can you please have the HOA attorney contact me about pursuing a more aggressive alternative course of action?

SCR20-21. Here the HOA president clearly demonstrates that the reason the HOA does not want Westlake Recovery House residents living in the neighborhood is precisely because the home is a group home for recovering alcoholics and drug addicts. This is more than a scintilla of probative evidence that the HOA regarded and discriminated against the residents and, consequently, evidence that the residents satisfy the third statutory definition of "handicapped."

\*     \*     \*     \*     \*

45

In summary, this Court should hold that the plaintiff HOA failed to demonstrate conclusively that Mr. Tarr's use of the property as a group home for recovering alcoholics and drug addicts is not a permitted "residential use" as defined in the deed restriction, which incorporates statutory prohibitions against interpreting restrictive covenants to exclude group homes. As the party asserting that Mr. Tarr breached paragraph 4.1, it was the HOA's burden. Because it failed to conclusively prove that Mr. Tarr's use was not a permissible use, the HOA was not entitled to summary judgment, and the trial court's judgment should be reversed and remanded.

Even if the deed restriction did not incorporate the statutory protections and it was Mr. Tarr's burden to demonstrate that his group home was a permissible and protected group home, Mr. Tarr carried this burden by proffering more than a scintilla of evidence that the residents of Westlake Recovery House meet one or more of the statutory definitions of handicap. Thus, the HOA was not entitled to summary judgment, and the trial court's judgment should be reversed and remanded.

## C. The HOA failed to give Mr. Tarr proper notice of the alleged violations of the deed restrictions.

Section 12.8 of the deed restrictions requires that the HOA give ten-days' notice of an alleged violation of the deed restrictions before taking any action to enforce the restriction. CR34, ¶12.8. It is undisputed that the HOA failed to give Mr. Tarr proper notice. In response to Mr. Tarr's summary judgment response on this point, the HOA produced a letter proving this point. The letter from the HOA's

attorney to Mr. Tarr was sent on August 10, 2012. CR474. Yet just four days later, on August 14, 2012, the HOA filed suit and obtained a temporary restraining order at an *ex parte* hearing. CR4-50. Texas law is clear; the HOA's failure to give Mr. Tarr proper notice of the alleged violation prior to bringing suit is fatal to the HOA's claim. *See Ashcreek Homeowner's Ass'n, Inc. v. Smith*, 902 S.W.2d 586, 589-90 (Tex. App.—Houston [1st Dist.] 1995, no writ).

## II. The trial court erroneously granted summary judgment on Mr. Tarr's counterclaims based entirely on its erroneous summary judgment on the affirmative defenses.

Even though Mr. Tarr's counterclaims were not at issue in the HOA's first motion for partial summary judgment, the HOA nevertheless argued that the first summary judgment on the affirmative defenses should preclude Mr. Tarr's counterclaims. The HOA did not offer any other ground for dismissing Mr. Tarr's counterclaims. This is the entirety of the HOA's argument on Mr. Tarr's statutory claims:

> Tarr asserts causes of action of the Federal and Texas Fair Housing Act[s], the Texas Housing Act, the Americans with Disabilities Act, and the Federal Rehabilitation Act. Because the Court has already ruled as a matter of law that Tarr is not entitled to said protections and/or said protections are inapplicable, there is no fact issue that exists and, as such, said causes of action (which are nothing more than a repeat of the affirmative defenses should be dismissed as a matter of law.

47

CR301. A motion can be granted based only on grounds raised in the motion. *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 912 (Tex. 1997). Thus, the propriety of the summary judgment on Mr. Tarr's statutory counterclaims rises and falls with the assertion that the trial court had already properly "ruled as a matter of law" that these statutes did not protect the group home. *See* TEX. R. CIV. P. 166a(c); *Science Spectrum,* 941 S.W.2d at 912. As discussed below, it did not and, consequently, the judgment dismissing Mr. Tarr's counterclaims should be reversed and remanded.

### A. Because the first partial summary judgment was in error, it cannot negate Mr. Tarr's counterclaims.

The trial court's first partial summary judgment was based on the mistaken conclusion that Mr. Tarr had failed to adduce evidence to support the applicability of these protections. As discussed above, the evidence establishes that there is a genuine issue of material fact regarding whether the residents of Westlake Recovery House are handicapped. Thus, there is no basis for granting summary judgment with respect to the statutory affirmative defenses, much less Mr. Tarr's counterclaims.

### B. Even a valid partial summary judgment on Mr. Tarr's statutory affirmative defenses would not negate the counterclaims.

The first partial summary judgment rules only that Mr. Tarr failed to carry his burden on his affirmative defenses based on the federal and state protections. What it does not do, and could not do, is affirmatively establish that the residents of

48

Westlake Recovery Home are not handicapped or rule that Mr. Tarr presented no evidence in support of his counterclaims. *C&R Transp. Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex. 1966) (holding that failure to meet a burden to prove something is not proof of the opposite proposition). Mr. Tarr's counterclaims were not part of the HOA's first motion for partial summary judgment. Thus, Mr. Tarr was not put to his proof on his counterclaims. They were not within the scope of the motion. Instead, the HOA chose to limit the scope of its first motion to the affirmative defenses.

Further, it is improper procedurally to decide the counterclaims as part of the first partial summary judgment when those counterclaims were not part of the first motion. Applying the first partial summary judgment ruling to the counterclaims impermissibly retroactively enlarges the scope of The HOA's first motion for partial summary judgment. This violates Rule 166a(c), which requires a summary judgment movant to state the grounds in the motion. The HOA's first motion did not purport to address the counterclaims. Further, using the first summary judgment ruling as the affirmative defenses in this manner disregards and circumvents Rule 166a's notice requirements. Rule 166a(c) provides that a summary judgment movant "shall state the specific grounds therefore." TEX. R. CIV. PROC. 166a(c). The first summary judgment did not include the counterclaims and did not give Mr.

49

Tarr notice that his counterclaims would be governed by a ruling on affirmative defenses.

Mr. Tarr's counterclaims should have been evaluated on the evidence before the trial court when the motion was considered, not more limited evidence proffered in response to a different motion on a different part of the case. Mr. Tarr was free to produce evidence in support of his counterclaims when the HOA challenged them in its second motion for partial summary judgment. And because the first partial summary judgment was interlocutory, the trial court could and should have considered the later-offered evidence, including Mr. Tarr's second affidavit and the affidavits of the Westlake Recovery House residents. SCR19-37. *See Ohrt*, 398 S.W.3d at 327-28 ("A partial summary judgment is interlocutory and thus the trial court retains the right to reconsider it until it enters a final judgment."); *Fabio*, 226 S.W.3d at 560-61; *Clark*, 184 S.W.3d at 909 (Tex. App.—Austin 2006, pet. denied); *Loy*, 128 S.W.3d at 409; *see also Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex. 1993) (per curiam) ("The trial court also retains continuing control over interlocutory orders and has the power to set those orders aside any time before a final judgment is entered."). Further, the trial court indicated in its order granting the HOA's second motion for partial summary judgment indicates that it considered Mr. Tarr's response, which included his second affidavit and the affidavits of the residents of Westlake Recovery House. CR496. And there is no unfairness to the

HOA in this; the HOA chose to move for summary judgment in a piecemeal fashion. If it had intended for the first summary judgment on the affirmative defenses to govern Mr. Tarr's counterclaims, it should have moved on both bases in the first motion for summary judgment.

As discussed in Part I.B above, Mr. Tarr's affidavit in response to the first summary judgment raises a fact issue with respect to whether the residents of his group home are handicapped or disabled within the meaning of the relevant statutes. Additionally, in response to the HOA's second motion for partial summary judgment, Mr. Tarr submitted the affidavits of seven residents of his group home supporting this conclusion. Each explained that group living, particularly in a residential setting, is important to his recovery from addiction. Each also testified as to how their respective drug and/or alcohol addictions have limited, and continue to substantially limit, major life activities.

Because there is a genuine issue of material fact as to whether the residents of Westlake Recovery House are handicapped, summary judgment on Mr. Tarr's counterclaims was improper and should be reversed.

## III. The trial court erred in awarding attorney's fees to the HOA based on a void and unenforceable injunction.

If the Court concludes that the trial court erred in granting summary judgment on the HOA's claim that Mr. Tarr's group home violates the deed restriction, then it must also reverse the award of $88,000 in attorney's fees that is based solely on that

claim.[10]  But even if the Court upholds the trial court's judgment with respect to the HOA's breach claim, it must nonetheless reverse the award of $88,000 in attorney's fees.  Attorney's fees may be awarded to the prevailing party.  But, while facially succeeding in the trial court, the HOA did not obtain any meaningful relief effecting a material alteration of the legal relationship of the parties.  Rather, it obtained an injunction that is void and unenforceable.  Thus, the HOA is not a prevailing party and may not recover attorney's fees.

The HOA moved for attorney's fees under section 5.006 of the Texas Property Code, which provides: "[i]n an action based on breach of a restrictive covenant pertaining to real property, the court shall allow to a prevailing party who asserted the action reasonable attorney's fees in addition to the party's costs and claim."  TEX. PROP. CODE § 5.006(a).  The Property Code does not define "prevailing party," but Texas courts have looked to federal jurisprudence when construing a contractual "prevailing party" attorney's-fees provision that did not define the term, and, as this Court has concluded, that analysis is instructive here.  *See Intercontinental Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653-54 (Tex. 2009); *Norton v. Deer Creek Prop. Owners Ass'n, Inc.*, No. 03-09-00422-CV, 2010 WL 2867375, at *8 (Tex. App.—Austin July 22, 2010, no pet.) (mem. op.) (applying Intercontinental

---

[10] The HOA moved for attorney's fees solely on the basis of its breach claim pursuant to Texas Property Code section 5.006.  CR499-503.

52

to section 5.006(a); "The Texas Supreme Court's analysis [in *Intercontinental*] in construing an undefined contractual "prevailing party" provision is equally applicable to our construction of the undefined statutory "prevailing party" provision involved here."). In *Intercontinental Group,* the Texas Supreme Court noted that under federal law, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 654 (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)). And as this Court explained in *Wibbenmeyer v. TechTerra Communications, Inc.*, the United States Supreme Court has held that to be a "prevailing party," the party must have obtained relief from the court (e.g., "enforceable judgments on the merits and court-ordered consent decrees") that effect a "material alteration of the legal relationship of the parties." No. 03-09-00122-CV, 2010 WL 1173072, at *10 (Tex. App.—Austin Mar. 26, 2010, pet. denied) (mem. op.) (quoting *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Resources, Inc.*, 532 U.S. 598, 603-05, 121 S. Ct. 1835, 149 L. Ed.2d 855 (2001)). In the words of the United States Supreme Court, "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Hewitt v. Helms*, 482 U.S. 755, 760, 107 S. Ct. 2672, 2675-76, 96 L. Ed. 2d 654 (1987).

Here, The HOA did not receive any actual relief. The position of the parties is precisely what it was before the HOA filed suit. Although the trial court issued an injunction, as discussed below, that injunction is void and unenforceable. The injunction merely commands Mr. Tarr to "refrain from breaching the Declaration of Covenants, Conditions and Restrictions." CR617; CR622. This injunction is void for at least two reasons: the injunction (1) does not specifically identify the behavior that Mr. Tarr must refrain from and (2) refers to an extraneous document, the deed covenants, to define its scope.

As the Texas Supreme Court has stated, "an injunction decree must be as definite, clear and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing." *Villalobos v. Holguin,* 146 Tex. 474, 208 S.W.2d 871, 875 (Tex. 1948). And, as this Court has recognized, "[t]he injunction must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him." *Drew v. Unauthorized Practice of Law Comm.*, 970 S.W.2d 152, 156 (Tex. App.—Austin 1998, pet. denied); *see also In re Krueger*, No. 03-12-00838-CV, 2013 WL 2157765, at *5 (Tex. App.—Austin May 16, 2013, orig. proceeding) (mem. op.); *Enriquez v. Rodriguez-Mendoza*, No. 03-12-00220-CV, 2013 WL 490993, at *3

54

(Tex. App.—Austin Feb. 1, 2013, no pet.) (mem. op.) ("An injunction must be definite, clear, and precise; it must inform the defendant of the acts restrained without calling on the defendant to make inferences." (citing TEX. R. CIV. P. 683 and *Webb v. Glenbrook Owners Ass'n,* 298 S.W.3d 374, 384 (Tex. App.—Dallas 2009, no pet.))).

But the injunction issued by the trial court here does not specify what conduct is prohibited or how Mr. Tarr is to comply with the injunction. Compliance with the injunction requires that Mr. Tarr interpret the deed restrictions and infer what conduct is prohibited. For example, what if Mr. Tarr had all new residents at Westlake Recovery House? Does the injunction prohibit just the current residents? Is Mr. Tarr prohibited from ever using the home as a group recovery home? Any finding that the statutory protections did not apply to the previous residents would be immaterial, and any action to enforce the injunction by contempt would require additional factual determinations regarding whether those residents are handicapped. The injunction's failure to "spell out the details of compliance in clear, specific and unambiguous terms" so that Mr. Tarr can "readily know exactly what duties or obligations are imposed upon him" renders the injunction void and unenforceable. *In re Krueger*, 2013 WL 2157765, at *5-6.

Further, as this Court explained in *In re Krueger*, an injunction is void if another document, like the deed restrictions, "provides the means of describing the

55

act or acts sought to be restrained." 2013 WL 2157765, at *6. Texas Rule of Civil Procedure 683 provides in relevant part: "Every order granting an injunction . . . shall describe in reasonable detail *and not by reference to the complaint or other document*, the act or acts sought to be restrained." TEX. R. CIV. P. 683 (emphasis added); *In re Krueger*, 2013 WL 2157765, at *6; *Webb*, 298 S.W.3d at 384. Here, the only reference for what is prohibited or permitted is found in another document, the deed restrictions. One might well imagine that Mr. Tarr and the HOA may differ with respect to the proper interpretation of those deed restrictions.

Because the injunction is void, it "has no force or effect and confers no rights; it is a mere nullity." *In re Garza*, 126 S.W.3d 268, 271 (Tex. App.—San Antonio 2003, orig. proceeding); *In re McCray*, No. 05-13-01195-CV, 2013 WL 5969581, at *2 (Tex. App.—Dallas Nov. 7, 2013, orig. proceeding) (mem. op.). And "attorney's fees based upon a void order must also be void." *In re McCray*, 2013 WL 5969581, at *2 (Tex. App.—Dallas Nov. 7, 2013, orig. proceeding) (mem. op.) (citing *Ex parte Fernandez*, 645 S.W.2d 636, 639 (Tex. App.—El Paso 1983, no writ); *In re Estate of Byrom*, No. 120900279CV, 2011 WL 590588, at *4 (Tex. App.—Tyler Feb. 16, 2011, pet. denied) (mem. op.)). The Texas Supreme Court explained in *Intercontinental* that "[w]hether a party prevails turns on whether the party prevails upon the court to award it something, either monetary or equitable." And like the plaintiff in that case, the HOA "got nothing except a jury finding that [Mr. Tarr

56

breached the deed restrictions or failed to carry a summary judgment burden]. It recovered no damages; it secured no declaratory or injunctive relief; it obtained no consent decree or settlement in its favor; it received nothing of value of any kind, certainly none of the relief sought in its petition." *Intercontinental*, 295 S.W.3d at 655. Thus, the attorney's fees award must be reversed.

## CONCLUSION AND PRAYER

Appellant Mr. Tarr prays that the Court reverse the trial court's judgment and remand for trial on both the HOA's breach claim and Appellant's counterclaims. Appellant further prays that the Court vacate the injunction and award of attorney's fees. Appellant also prays for such other and further relief to which he may be justly entitled.

Respectfully submitted,

*/s/ Matthew Ploeger*
Matthew Ploeger
State Bar No. 24032838
LAW OFFICE OF MATTHEW PLOEGER
901 S. Mopac Expressway, Suite 300
Barton Oaks Plaza, Building One
Austin, Texas 78746
P: 512.329.1926
F: 512.298.1787
Matthew@PloegerLaw.com
*Attorney for Appellant*

57

**CERTIFICATE OF COMPLIANCE**

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 14,345 words. This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 12-point typeface.  In making this certificate of compliance, I have relied on the word count provided by the software used to prepare the document.

/s/ Matthew Ploeger
Matthew Ploeger

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing Brief of

Appellant on all counsel of record on March 16, 2015, as listed below:

Gregory B. Godkin                                   *Via Electronic Service*
Roberts Markel Weinberg, PC
2800 Post Oak Blvd., 57th Floor
Houston, TX 77056
713.840.1666–telephone
713.840.9404–facsimile


/s/ Matthew Ploeger
Matthew Ploeger

# APPENDIX

Appendix A:  Final Modified Judgment

Appendix B:  Order on First Motion for Partial Summary Judgment

Appendix C:  Orders on Second Motion for Partial Summary Judgment

Appendix D:  Order and Letter on Third Motion for Partial Summary Judgment

# Appendix A

Filed in The District Court
of Travis County, Texas

ER OCT 2 8 2014

At  **9:28am**   M.

Amalia Rodriguez-Mendoza, Clerk

## CAUSE NO. D-1-GN-12-002467

| | | |
|---|---|---|
| **LANTANA SOUTHWEST HOMEOWNERS' ASSOCIATION, INC.,** *Plaintiff/Counter-Defendant,* | §<br>§<br>§<br>§<br>§<br>§ | **IN THE DISTRICT COURT OF** |
| **VS.** | §<br>§<br>§ | **TRAVIS COUNTY, TEXAS** |
| **KEVIN TARR,** *Defendant/Counter-Plaintiff* | §<br>§ | **98TH JUDICIAL DISTRICT** |

## FINAL MODIFIED JUDGMENT

Plaintiff LANTANA SOUTHWEST HOMEOWNERS' ASSOCIATION, INC., ("Plaintiff" or "Lantana") filed this lawsuit (the "lawsuit") on or about August 14, 2012 against Kevin Tarr ("Tarr").

On or about August 27, 2012 Tarr filed his Answer and Counterclaim.

On September 30, 2013, the Honorable Stephen Yelenosky signed an Order Granting Lantana's No Evidence Motion for Partial Summary Judgment as to Tarr's Federal Fair Housing Act, Texas Fair Housing Act, American's With Disabilities Act, and Federal Rehabilitation Act affirmative defenses. Judge Yelenosky inadvertently put "9 Day of September" as the date the Order was signed. The parties hereto agree and stipulate that this was an error and the hearing, as well as the signing of Order Granting Lantana's No Evidence Motion for Partial Summary Judgment as to Tarr's Federal Fair Housing Act, Texas Fair Housing Act, American's With Disabilities Act, and Federal Rehabilitation Act affirmative defenses, both took place on September 30, 2013. The Court hereby includes said Order by reference in this Final Modified Judgment.



On March 24, 2014, the Honorable Eric Shepperd signed an Order Granting Lantana's Traditional Motion For Partial Summary Judgment as to Tarr's Texas and Federal Fair Housing Act, Texas and Federal Americans With Disabilities Act, Federal Rehabilitation Act, 1st and 14th Amendment rights and Texas Constitution, City of Austin's Code of Municipal Ordinances and Austin's Municipal Public Policy, and Lantana's violation of its own residential use deed restrictions causes of action. Judge Shepperd also Granted Lantana's No Evidence Motion for Partial Summary Judgment as to Tarr's 1st and 14th Amendment rights and Texas Constitution, City of Austin's Code of Municipal Ordinances and Austin's Municipal Public Policy, and Lantana's violation of its own residential use deed restrictions causes of action. The Court hereby includes said Order by reference in this Final Modified Judgment.

On March 24, 2014, Judge Shepperd also Granted Lantana's Traditional Motion for Partial Summary Judgment as to its breach of Lantana's Declaration of Covenants, Conditions, and Restrictions cause of action against Tarr. The Court hereby includes said Order by reference in this Final Modified Judgment.

On July 30, 2014, the Honorable Gisela D. Triana partially Granted Lantana's Motion for Final Summary Judgment whereby she commanded Tarr to deist and refrain from breaching the Declaration of Covenants, Conditions and Restrictions for Lantana Southwest Single Family Properties and ordered the Clerk to issue a writ of injunctions in conformity with the law and the terms of her Order. The Court hereby includes said Order by reference in this Final Modified Judgment.

On September 3, 2014 the Honorable Amy Clark Meachum signed a Final Judgment that did not address the inadvertent September 9 date error giving rise to this Final Modified Judgment. The only remaining issue remaining in the case is Lantana's claim for attorney's fees.

The Court finds based on the signatures of their counsel that Lantana and Tarr have agreed that eighty eight thousand dollars ($88,000.00) are reasonable and necessary fees for the prosecution and defense of the above-referenced Lawsuit by Lantana up to the signing of this Final Modified Judgment. Lantana and Tarr further agree that thirty five thousand dollars ($35,000.00) are reasonable and necessary fees to be paid to Lantana should Tarr file an unsuccessful appeal of this cause to the Texas Court of Appeals. This agreed amount, however, is the maximum amount to be paid by Tarr to Lantana in the event of said appeal and all amounts due and payable must have been incurred by or on behalf of Lantana.

No part of this Final Modified Judgment or the prior orders of this Court are agreed to by Tarr except the amount of reasonable and necessary attorneys fees set forth above, and Tarr reserves his right to appeal from every other ruling in this Judgment and those prior orders.

Based on the prior orders of this Court and the parties' agreement concerning reasonable and necessary attorney's fees it is:

ORDERED, ADJUDGED AND DECREED that the Plaintiff Lantana shall have judgment from and against the Defendant Tarr as follows:

1.     Attorneys Fees in the amount of $88,000 for fees up to the signing of this Final Judgment;

2.     Attorneys Fees incurred by or on behalf of Lantana up to a maximum of $35,000 in the event of an unsuccessful appeal by Tarr;

3.     All relief not expressly granted herein is denied.

IT IS FURTHER ORDERED that this Final Modified Judgment is final, disposes of all remaining claims between all parties, and is appealable.

IT IS FURTHER ORDERED that the Plaintiff shall have all writs and execution necessary to satisfy and enforce the terms of this Final Modified Judgment.

SIGNED this **28**th day of **October**, 2014.

_____
JUDGE PRESIDING

AGREED AS TO FORM AND SUBSTANCE:

             Respectfully submitted,
             **ROBERTS MARKEL WEINBERG BUTLER HAILEY PC**

             _____
             **GREGORY B. GODKIN**
             Texas State Bar No. 24002146
             111 Congress, Suite 1620
             Austin, TX 78701
             ggodkin@rmwbhlaw.com
             Telephone: (713) 840-1666
             Fax: (713) 840-9404
             **Attorneys for Lantana Southwest**
             **Homeowners' Association, Inc.**

AGREED AS TO FORM ONLY:

SIMON HERBERT & McCLELLAND, LLP

_____/S/_____
PAUL SIMON
Texas State Bar No. 24003276
SHANE McCLELLAND
Texas State Bar No. 24046383
3411 Richmond Avenue, Suite 400
Houston, TX 77046
Telephone: (713) 987-7100
Fax: (713) 987-7120

**Attorneys for Defendant,**
**Kevin Tarr**

# Appendix B

Notice sent: Final   Interlocutory   None

Disp Parties:_____

Disp code: CVD / CLS_____

Redact pgs:_____

Judge __SAY____ Clerk __DP____

Filed in The District Court
of Travis County, Texas

**SEP 3 0 2013**

At __12:14pm KD__ __M.

Amalia Rodriguez-Mendoza, Clerk

CAUSE NO. D-1-GN-12-002467

| | | |
|---|---|---|
| LANTANA SOUTHWEST HOMEOWNERS' ASSOCIATION, INC., | § § § | IN THE DISTRICT COURT OF |
|     *Plaintiff and Counter-Defendant,* | § § | |
| VS. | § § | TRAVIS COUNTY, TEXAS |
| | § § | |
| KEVIN TARR, | § | |
|     *Defendant and Counter-Plaintiff.* | § | 98TH JUDICIAL DISTRICT |

### ORDER GRANTING LANTANA SOUTHWEST HOMEOWNERS' ASSOCIATION, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

On the 30th day of September, 2013, came to be considered Plaintiff's Lantana Southwest Homeowners' Association, Inc.'s Motion for Partial Summary Judgment. After considering the Motion, the Response, and the arguments and authorities presented and those previously considered by the Court, the Court hereby:

**GRANTS** Plaintiff's No Evidence Summary Judgment Motion as to the Federal Fair Housing Act;

**GRANTS** Plaintiff's No Evidence Summary Judgment Motion as to the Texas Fair Housing Act;

**GRANTS** Plaintiff's No Evidence Summary Judgment Motion as to the Americans with Disabilities Act; and

**GRANTS** Plaintiff's No Evidence Summary Judgment Motion as to and the Federal Rehabilitation Act.

SIGNED this __9__ day of __September__, 2013.

_____
JUDGE PRESIDING

# Appendix C

Notice sent: Final Interlocutory None

Disp Parties:_____

Disp code: CVD / CLS

Redact pgs:_____

Judge___EMS___ Clerk___BWH___

DC    BK14084 PG486

CAUSE NO.   D-1-GN-12-002467

| LANTANA SOUTHWEST | § | IN THE DISTRICT COURT OF |
| HOMEOWNERS' ASSOCIATION, | § | |
| INC., | § | |
| *Plaintiff and Counter-Defendant,* | § | |
| | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | |
| KEVIN TARR, | § | |
| *Defendant and Counter-Plaintiff.* | § | 98TH JUDICIAL DISTRICT |

## ORDER GRANTING PLAINTIFF LANTANA SOUTHWEST HOMEOWNERS' ASSOCIATION, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

On the 18th day of February, 2014, came to be considered Plaintiff Lantana Southwest Homeowners' Association, Inc.'s Motion for Partial Summary Judgment. After considering the Motion, the Response, the Reply, and the arguments and authorities presented and those previously considered by the Court, the Court hereby:

**GRANTS** / **DENIES** Plaintiff Lantana Southwest Homeowners' Association, Inc.'s Partial Motion for Summary Judgment as to its breach of Lantana's Declaration of Covenants, Conditions and Restrictions cause of action against Defendant Kevin Tarr.

**SIGNED** this 24th day of ___March___, 2014.

_____
ERIC SHEPPERD
JUDGE PRESIDING

Filed in The District Court
of Travis County, Texas
MAR 24 2014
At_____320____M.
Amalia Rodriguez-Mendoza, Clerk

496

Notice sent:  Final   Interlocutory   None

Disp Parties:_____

Disp code:  CVD / CLS _____

Redact pgs:_____

Judge___EMS___ Clerk___PWH____

CAUSE NO.  D-1-GN-12-002467

| | | |
|---|---|---|
| LANTANA SOUTHWEST HOMEOWNERS' ASSOCIATION, INC., | § § § § | IN THE DISTRICT COURT OF |
| *Plaintiff and Counter-Defendant,* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § § | |
| KEVIN TARR, | § | |
| *Defendant and Counter-Plaintiff.* | § | 98TH JUDICIAL DISTRICT |

### ORDER GRANTING LANTANA SOUTHWEST HOMEOWNERS' ASSOCIATION, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

On the 18th day of February, 2014, came to be considered Counter-Defendant's Lantana Southwest Homeowners' Association, Inc.'s ("Lantana") Motion for Partial Summary Judgment as to Counter-Plaintiff Kevin Tarr's ("Tarr") counterclaims.  After considering the Motion, the Response, the Reply, and the arguments and authorities presented and those previously considered by the Court, the Court hereby:

**GRANTS / DENIES** Lantana's Motion for Summary Judgment as to Tarr's Texas and Federal Fair Housing Act causes of action;

**GRANTS /** DENIES Lantana's Motion for Summary Judgment as to Tarr's Texas and Federal Americans with Disabilities Act causes of action;

**GRANTS /** DENIES Lantana's Motion for Summary Judgment as to Tarr's Federal Rehabilitation Act cause of action;

**GRANTS /** DENIES Lantana's Motion for Summary Judgment as to Tarr's 1st and 14th Amendment rights and Texas Constitution causes of action pursuant to Texas Rule of Civil Procedure 166(a)(c).

**GRANTS /** DENIES Lantana's No Evidence Motion for Summary Judgment as to Tarr's 1st and 14th Amendment rights and Texas Constitution causes of action pursuant to Texas Rule of Civil Procedure 166(a)(i).

Filed in The District Court
of Travis County, Texas
MAR 2 4 2014
320
At_____ M.

1

(GRANTS) DENIES Lantana's Motion for Summary Judgment as to Tarr's City of Austin's Code of Municipal Ordinances and Austin's Municipal Public Policy causes of action pursuant to Texas Rule of Civil Procedure 166(a)(c).

(GRANTS) DENIES Lantana's No Evidence Motion for Summary Judgment as to Tarr's City of Austin's Code of Municipal Ordinances and Austin's Municipal Public Policy causes of action pursuant to Texas Rule of Civil Procedure 166(a)(i).

(GRANTS) DENIES Lantana's Motion for Summary Judgment as to Tarr's claim that Lantana violated its own residential use deed restrictions pursuant to Texas Rule of Civil Procedure 166(a)(c).

(GRANTS) DENIES Lantana's No Evidence Motion for Summary Judgment as to Tarr's claim that Lantana violated its own residential use deed restrictions pursuant to Texas Rule of Civil Procedure 166(a)(i).

SIGNED this _24th_ day of _March_, 2014.

_ERIC SHEPPERD_

JUDGE PRESIDING

2

# Appendix D

Notice sent: Final Interlocutory None
Disp Parties:
Disp code: CVD / CLS
Redact pgs:
Judge GDT Clerk BH

DC  BK14213 PG142

Filed in The District Court
of Travis County, Texas

JUL 30 2014
At 4:32 P
Amalia Rodriguez-Mendoza, Clerk

CAUSE NO. D-1-GN-12-002467

| | | |
|---|---|---|
| LANTANA SOUTHWEST HOMEOWNERS' ASSOCIATION, INC., | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff and Counter-Defendant,* | § § | |
| VS. | § § § | TRAVIS COUNTY, TEXAS |
| KEVIN TARR, | § § | |
| *Defendant and Counter-Plaintiff.* | § | 98TH JUDICIAL DISTRICT |

## ORDER PARTIALLY GRANTING PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT

On the 21st day of July, 2014, came to be considered Plaintiff Lantana Southwest Homeowners' Association, Inc.'s Motion for Final Summary Judgment. After considering the Motion, the Response, the Reply, and the arguments and authorities, the Court hereby:

**GRANTS** Lantana Southwest Homeowners' Association, Inc.'s Motion for Final Summary Judgment, **IN PART ONLY.**

**IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED** that Kevin Tarr is hereby commanded to desist and refrain from breaching the Declaration of Covenants, Conditions, and Restrictions for Lantana Southwest Single Family Properties.

All relief not expressly herein given is **DENIED.**

The Clerk shall forthwith, when so requested by Plaintiff, issue a writ of injunction in conformity with the law and the terms of this Order.

SIGNED this 30th day of July, 2014.

The Honorable Gisela D. Triana

I agree that this reflects the Court's ruling from the bench.

Richard Hunt, Attorney for Defendant

617

Respectfully submitted,
**ROBERTS MARKEL WEINBERG BUTLER HAILEY PC**

**GREGORY B. GODKIN**
Texas State Bar No. 24002146
111 Congress, Suite 1620
Austin, Texas 78701
ggodkin@rmwbhlaw.com
Telephone: (512) 279-7344
Fax: (713) 840-9404
Attorneys for Lantana Southwest
Homeowners' Association, Inc.



**Filed in The District Court of Travis County, Texas**

JUL 30 2014

At 4:32 P vi

Amalia Rodriguez-Mendoza, Clerk

# 200TH DISTRICT COURT

**GISELA D. TRIANA**
Judge

JAMES T. PARSONS
Staff Attorney
(512) 854-4916

JACOB STOKES
Court Operations Officer
(512) 854-9306

TRAVIS COUNTY COURTHOUSE
P. O. BOX 1748
AUSTIN, TEXAS 78767

July 30, 2014

LaDELLE ABILEZ
Official Court Reporter
(512) 854-9325

LYDIA MARTINEZ
Court Clerk
(512) 854-5838

Mr. Gregory B. Godkin
ROBERTS MARKEL WEINBERG
BUTLER HAILEY PC
111 Congress Avenue, Suite 1620
Austin, Texas 78701
Via email to ggodkin@rmwbhlaw.com

Mr. Richard Hunt
HUNT HUEY, PLLC
3102 Maple Avenue, Suite 625
Dallas, Texas 75201
via email to rhunt@hunthuey.com

Mr. C. Robert Dorsett, Jr.
DORSETT JOHNSON & SWIFT, LLP
12912 Hill Country Boulevard, Suite F210
Austin, Texas 78738
Via email to eservice@dorsettjohnson.com

RE: Cause No. D-1-GN-12-002467; In the 98th Judicial District Court of Travis Co., Tx.
*Lantana Southwest Homeowners Ass'n Inc. v. Kevin Tarr*

Dear Counsel,

On July 21, 2014, the Court considered and took under advisement Plaintiff's Motion for Final Summary Judgment in the above-referenced cause. After considering the motion, the response, the reply, the admissible summary judgment evidence, and the applicable law, the Court will find as follows.

The Court has signed the Order Partially Granting Plaintiff's Motion for Final Summary Judgment, which the parties have approved as to form, addressing the permanent injunction. Regarding Plaintiff's remaining claim for attorney's fees, the Court will find that it is a fact issue as to the amount of reasonable and necessary fees, but that Plaintiff may recover the attorney's fees for prevailing against defenses asserted to its primary claim. The parties also disagree on whether the attorney's fees must be segregated. The Court does not decide which fees, if any, must be segregated, but provides the following guidance after considering the applicable Texas law on this issue.

The question of whether segregation is required in a particular case is a legal inquiry, subject to de novo review. *See Transcon. Realty Investors, Inc. v. McGuire, Craddock, Strother*

<span style="color:blue">619</span>

Cause No. D-1-GN-12-002467;
In the 98th Judicial District Court of Travis Co., Tx.
*Lantana Southwest Homeowners Ass'n Inc. v. Kevin Tarr*
July 30, 2014

620

& *Hale, P.C.*, 2011 Tex. App. LEXIS 2968, \*13 (Tex. App. Dallas Apr. 20, 2011). When affirmative defenses are asserted to a claim for which attorney's fees can be recovered, Texas courts will not automatically allow the opposing party to suggest to the jury that overcoming those defenses was unnecessary or required to be segregated. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006); *see also, Transcon. Realty Investors, Inc.* at \*13. Often the fees associated with affirmative defenses can be recovered as part of the main claim. The same principles can even apply in particular cases regarding the prevailing party having to overcome counterclaims, when the counterclaim is in essence a defense to the claim. *See 7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 507 (Tex. App.— Houston [14th Dist.] 2007, pet. denied) (*citing Varner v. Cardenas*, 218 S.W.3d 68, 69-70 (Tex. 2007) (per curiam). Pursuant to this line of cases, Defendant likely cannot require segregation of all the expenses associated with their affirmative defenses/counterclaims since many of these expenses will be intertwined with the enforcement of Plaintiff's claim. However, the Court that oversees the trial on the remaining merits (the reasonable and necessary attorney's fees) is in the best position to make specific rulings on disputes regarding segregation.

Sincerely,

Gisela D. Triana
Judge, 200th District Court
Travis County, Texas